JOSHUA P. BROWNING v. The CAMDEN AND WOODBURY RAIL-ROAD AND TRANSPORTATION COMPANY et al.

By the eighth section of the charter of " The Camden and Woodbury Railroad and Transportation Company," it is provided "that the said corporation shall pay or make tender of payment of all damages for the occupancy of the lands through which the said road may be laid out, before the said company, or any person in their employ, shall enter upon or break ground in the premises, except for the purpose of surveying said route, unless the consent of the owner or owners of such land be first had and obtained."

By the ninth section of the charter it is further provided, "that in case the company and the owners of land cannot agree as to the price, commissioners shall be appointed to assess the value of the said land, and the damages sustained by the owner; and if either party shall feel aggrieved by the decision of the commissioners, such party may appeal to the court of common pleas of the county, who shall have power to hear and adjudge the same, and if required to award a venire for a jury before them to hear and finally determine the same."

*Held*, that if the value of the land and damages be ascertained by commissioners, and an appeal be taken from their decision, the company cannot, pending the appeal, by tendering the amount awarded by the commissioners, acquire a right to enter upon the land, except for the purpose of surveying the route.

The right to appeal from the decision of the commissioners is unconditional, and requires no cause to be shown.

The very act of appealing, sets aside the report of the commissioners, and

the question of the value of the land and damages is thereby left entirely open.

By the term *occupancy*, in the eighth section, is meant all the right or interest which the company could acquire in the land for the purposes contemplated by the act.

If the company claim a right to enter upon land under color of law, without having complied with the requirements of that law, a court of equity will restrain their entry by injunction.

BILL for injunction and relief, filed February eighth, eighteen hundred and thirty-seven. The bill states, that the complainant is the owner, and seized and possessed in fee simple, of a valuable farm situate in the township of Union, in the county of Gloucester and state of New Jersey, and that he has been seized and possessed thereof for five years last past, residing upon and cultivating the farm as his own; that the land of said farm is principally arable land of a very superior quality, on which the complainant has within a few years planted and reared at great expense, a large and valuable peach orchard, which is now in a healthy state and in full bearing; that on or about the first day of March, eighteen hundred and thirty-six, the legislature of the state of New-Jersey passed an act of incorporation entitled, "An act to incorporate the Camden and Woodbury Railroad and Transportation Company;" whereby J. P. B. and eleven others, and such other persons as might thereafter be associated with them, were constituted a body corporate and politic, and made capable among other things of purchasing, holding and conveying any lands and tenements, goods and chattels whatsoever, necessary or expedient for the objects of their incorporation; and that the company had been duly organized, pursuant to the requirements of the act of incorporation.

The bill further charges, that in and by the eighth section of the said act of incorporation, the president and directors of the company are authorized and invested with all the rights and powers necessary and expedient to survey, lay out and construct a railroad, not exceeding sixty-six feet in width, to commence at some point in the city of Camden, in the

county of Gloucester, and to run to some point at the town of Woodbury, in said county, distant about eight miles, with as many sets of tracks or rails as they may deem necessary; and that it is in and by the said eighth section made lawful for the said president and directors, their agents, superintendents and others in their employ, to enter at all times upon all lands or water, for the purpose of exploring, surveying, levelling or laying out the route or routes of such road, and of locating the same, doing no unnecessary damage to private property; and that when the route of such road should be agreed upon and filed in the office of the secretary of state, it is thereby further made lawful for the said company, by its officers, agents, engineers, superintendents, contractors, workmen and other persons in their employ, to enter upon, take possession of, hold, have, use, occupy and excavate any such lands, and to erect embankments, bridges and all other works which may be necessary or suitable to call into full effect the objects of said charter; that there is a proviso or condition contained in the said section, by which it is provided that the said corporation shall pay or make tender of payment of all damages for the occupancy of the lands through which the said railroad may be laid out, before the said company, or any person in their employ, shall enter upon or break ground in the premises, except for the purpose of surveying said route, unless the consent of the owners of such land be first had and obtained.

That in and by the ninth section of the said act, it is further provided, that if the owners of the land on which said railroad shall be made, shall not be willing to give the same for such purpose, and the said company and owners cannot agree as to the price, it shall be the duty of any judge of the inferior court of common pleas of the said county of Gloucester, who is disinterested in the premises, upon the application of either party, and after hearing the parties, to appoint three disinterested freeholders of said county as commissioners to assess the price or value of said land, and to assess the damage which any individual or individuals may sustain by said road; and the said commissioners are thereby directed and required, after giving notice to both

parties of the time and place of meeting, to meet and view the premises and hear the parties, and therein to make such decision and award as to them shall seem just and proper, and transmit such award and decision, together with a description of the said land and the quantity taken, by whom owned and how situated, bounded and described, in writing under their hands and seals, or under the hands and seals of a majority of them, to the judge who appointed them, to be by him returned and filed, together with all the papers before him relating thereto, in the clerk's office of the county, there to be kept as a public record, and copies taken, if required by either party; and it is in and by the said ninth section further enacted, that if either party shall feel aggrieved by the decision of such commissioners, the parties so aggrieved may appeal to the inferior court of common pleas of the county, at the first or second term after the decision of the commissioners, by proceeding in the form of petition to the said court, with notice to the opposite party of such appeal, which proceeding shall vest in the said court of common pleas full right and power to hear and adjudge the same, and that if required, the said court shall award a venire in the common form, for a jury before them, to hear and finally determine the same, and that it shall be the duty of said jury to assess the value of said land and all damages sustained.

That the complainant permitted the said company and persons in their employ peaceably to enter upon his land for the purpose of surveying, laying out and locating said road, and that they entered thereon and located their road over and across his land without molestation or hindrance; that the said road is located across the most valuable part of the complainant's farm, and through his peach orchard; that the surface of the land is much higher than the intended grade of the road at that point, and that a ditch of between seven and eight feet deep will be necessary, so that the complainant's land, to a considerable extent, will have to be excavated and removed, and the peach orchard destroyed, in order to construct the road; that the route and location of the road across the complainant's farm is such as to cut off from his farm a valuable piece of land of a triangular

shape, which will be thereby rendered valueless to the complainant, and other lands of the complainant will be much injured and greatly lessened in value by the construction of said road.

That the complainant had frequently proposed to sell his land to the company for a reasonable price, and less than his estimate of the value of the land and the damages occasioned by the construction of the road, but that the company have refused to accept his offer, and that they cannot agree as to the price of the lands.

The bill further states, that the complainant being unable to agree with the said company for the price of his land, on the twenty-fourth day of August, eighteen hundred and thirty-six, a judge of the court of common pleas of the county of Gloucester, on the application of the company, had appointed commissioners to assess the value of the land wanted by the company, and damages under the act; that the commissioners had met and viewed the land in the presence of the officers and agents of the company, but in the complainant's absence; that the commissioners having viewed the premises, adjourned to meet at a subsequent day, of which the complainant had notice; that the complainant then attended and proved by two witnesses that the value of his land and damages was at least one thousand dollars, and by a third witness that the said value and damages were fifteen hundred dollars, and that to the complainant's knowledge, no witness was produced on the part of the company before the commissioners; that the commissioners assessed the value of complainant's land at one hundred and six dollars, and his damages at three hundred and sixteen dollars, making in the whole for his land and damages, four hundred and twenty-two dollars, which is not one third the value of his land and damages; that the complainant, according to the provisions of the act of incorporation, appealed to the inferior court of common pleas of the county of Gloucester, from the decision of the commissioners, and gave to the company due notice of the appeal; that the appeal is still pending undetermined in the said court, and that no assessment of the value of the complainant's land and of his damages has yet been made by a jury,

according to the provisions of the act of incorporation; that the complainant verily believes that much larger damages will be assessed by a jury than were awarded by the commissioners, and that before the said appeal can be tried the company will prove insolvent, so that if they are permitted to proceed in excavating and carrying away the complainant's land, he will sustain great and irreparable injury, without the possibility of redress.

The bill further states, that the boundaries and description of the complainant's land are not set out in the decision and award of the said commissioners as they ought to be, and that the quantity of land therein stated to be taken by the said company is incorrect, and much less than is actually taken.

The bill further charges, that a contractor of the company, with a number of laborers, on the first day of February instant, tore down the complainant's fences and commenced excavating and carrying away his land, and that they still continue so to do, without the said company, before entering on the complainant's land, paying or making tender to the complainant of all the damages for the occupancy of his said land, and without the consent of the complainant first had and obtained; that the entry so made by the company upon the complainant's lands was not made for the purpose of surveying the route of the road, but for the purpose of making and grading the same; admits that the company have tendered to the complainant the sum of four hundred and twenty-two dollars awarded by the commissioners, but denies that they have tendered to him all his damages sustained by the occupancy of the said land for the purpose of the said road.

The prayer of the bill is, that the company may pay to the complainant the damages he will sustain by the construction of the said road through his land, and that in the meantime, the said company, and their engineers, contractors, &c., may be restrained and injoined from committing further waste upon the complainant's land, and from entering upon and carrying away the same, and that the complainant may have such further and other relief as may be agreeable to equity, &c.

Upon filing the bill an injunction was issued as prayed for.

The defendants, by their answer, filed on the twenty-ninth of April, eighteen hundred and thirty-seven, admit many of the material allegations contained in the bill of complaint; but they deny that he ever offered to sell his land to the company, at any price; that the value of the land and damages as awarded by the commissioners is inadequate, or that a larger sum will be assessed by a jury; that there is any defect in the description of the complainant's lands contained in the award of the commissioners, or that the amount therein stated is less than the quantity actually required; and that the said company is insolvent or likely to become so. They allege that before entering on the complainant's land for the purpose of making or grading the road, they tendered to him the value of his land and damages, as awarded by the said commissioners, which he refused to accept, and that they are still willing to pay the same. They insist that the bill contains no equity; that the matters in dispute have been tried by the commissioners; that they may be tried again before the court of common pleas upon the appeal, pursuant to the provisions of the act of incorporation, or are otherwise triable at law, and that the complainant is entitled to no relief in equity.

A separate answer was also filed by James Smith, the contractor by whom the excavations upon the complainant's land were being made, stating that the work was done by him, by order and under the direction of the railroad company; that he had no interest in the work except as a contractor, and that in making the excavations and grading the road, no unnecessary damage was done to the complainant's land.

Upon filing the answer, notice was given by the defendants of a motion to dissolve the injunction.

The cause came on for hearing upon the motion to dissolve the injunction.

*R. L. Armstrong* and *Wall*, in support of the motion.

*Browning, Jeffers* and *Southard*, contra.

5*

THE CHANCELLOR. The defendants in this case were incorporated by an act of the legislature of New-Jersey, on the first of March, eighteen hundred and thirty-six, for the purpose of constructing a railroad from Camden to Woodbury. They were duly organized, and surveyed and laid out their road, which passed through the land of the complainant. The parties could not agree as to the price of the land, and the defendants, in pursuance of the ninth section of the act, called commissioners, who made an assessment of the value of the land and damages of the complainant; the amount whereof the defendants tendered to the complainant, which he refused to accept, and appealed from the decision of the commissioners, as by the same section he was authorized to do.

After making the tender of the amount reported by the commissioners, and pending the appeal, the defendants entered upon the land of the complainant and commenced making their road; claiming the right so to do by virtue of their act of incorporation, and the proceedings had under it. The complainant filed his bill for an injunction, to restrain the defendants from proceeding to make their road until the question of damages was settled upon the appeal. The injunction was granted. An answer was put in by the defendants to the bill, and upon that answer the defendants now move to dissolve the injunction.

Under these circumstances, the first question presented is, whether the defendants, by virtue of their charter, and their proceedings under it, are entitled to enter upon and take possession of the land of the complainant and make their road.

The decision of this question depends upon the true construction of the eighth and ninth sections of the act incorporating the defendants. By the eighth section, the company are invested with all the powers necessary to make the road, and for that purpose to enter upon the lands and form the road, &c. But their power is limited by this proviso: "That the said company shall pay, or make tender of payment, of all damages for the occupancy of the lands through which the said road may be laid out, before the said company, or any person in their employ, shall enter upon or break ground in the premises, except for the

purpose of surveying said route, unless the consent of the owner of such land be first had and obtained."

The ninth section provides, that if the parties cannot agree as to the price of the land, either party may have commissioners appointed, "to assess the price or value of said land, and the damage which any individual may sustain by the road, and from the decision of those commissioners either party may appeal to a jury, whose duty it shall be to assess the value of said land and all damages sustained," and their verdict shall be final; " and upon payment or tender of the sum so found by the commissioners, or by the jury, with costs, if any, the said corporation shall be deemed to be seized and possessed in fee simple of all such lands and real estate so appraised as aforesaid."

The rule of construction, in these cases, is correctly stated by the court in the case of *Buonaparte* v. *The Camden and Amboy Railroad Co.*, 1 *Bald.* 229. Justice Baldwin, in speaking of the authority of the company to take land, remarks, that " their authority is special, limited and conditional, and must be strictly followed. The law is made for their benefit, and it is their duty to take the previous steps incumbent on them, or they become trespassers. The principle is this: the company should not be interfered with if they are within their authority; but for the very reason that such large powers were given, the court will keep them within the limits of those powers. They must pursue the precise remedy given them by the law, and are entitled to no other."

In this case, the precise remedy prescribed by the act in case the parties cannot agree as to the price of the land, is, to call commissioners; and if either party are dissatisfied with their award, to appeal to the next court of common pleas and have the matter submitted to a jury.

The right to appeal from the decision of the commissioners is unconditional, and requires no cause to be shown. It is as much a part of the remedy as the right to call the commissioners. And the decision of the jury is declared to be final. The very act of appealing sets aside the report of the commissioners, and th

question of the value of the land and damages is yet entirely open. It is the duty of the company, who claim the right to enter, to show affirmatively that they have the right; and I cannot think that they have pursued the precise remedy given them by the law to ascertain the value of the land and damages, when that question is wholly undetermined, and when their right to the property depends upon paying or tendering the amount of the value of the land and damages.

But it was contended on behalf of the company, that by the eighth section of the act, they were authorized to take possession of the land and make their road, &c.; and that the only proviso or condition annexed was, that they should, before entry, pay or make tender of payment, of all damages for the occupancy of the land through which their road should run. And that the ninth section provides the means by which they shall obtain the title to the lands; which may be done after they have the possession or occupancy of the land, and made the road, by virtue of the provisions of the eighth section.

I do not consider this the true construction of the act. By the term occupancy, in the eighth section, I think the legislature meant all the right or interest which the company would have in the land for the purposes contemplated by the act. For, although in the latter part of the ninth section it is said, that the company shall be "deemed to be seized and possessed in fee simple," yet by the twenty-second section it is declared, that if at any time the road shall be abandoned, the land shall revert to the original owner or owners; thereby limiting the interest of the company to the mere use or occupancy of the land for the purposes contemplated by the act; which gives color to the use of the term occupancy as expressing all the right of the company in the land. If it mean any right less than their entire interest in the land, it must be an *occupancy* limited either in point of duration, or in the use which may be made of it. No such limitation is expressed in the section, nor can it be intended. Therefore the legislature, in the eighth section, when treating of the damages for the occupancy of the land, must have intended such

[Browning v. Camden and Woodbury Railroad Co.]

occupancy as was necessary for the company, to make and use the road according to the terms of their charter; and as to the value of the land holden, it is immaterial whether the company have the title such as they may acquire by virtue of their charter, or the mere right of occupancy. I therefore conclude that the legislature used the term occupancy, to express all the right and interest which the company could acquire in the land.

But if it be otherwise, it does not help the case of the defendants; for by the eighth section it is expressly provided, that they shall not enter nor break ground until they have paid or tendered all damages for the occupancy of the land; and there is no provision for ascertaining those damages, unless that provision is found in the ninth section. And I think it cannot be contended that in such case the company may make themselves the judges of the amount of damages, and obtain a right of entry by tendering such amount as they may consider sufficient; for if so, their right of entry would be as perfect by tendering an insufficient amount, as an amount that might eventually turn out to be sufficient.

In the case of *Buonaparte* v. *The Camden and Amboy Co.*, 1 *Bald.* 227, the court, in treating of this subject, say, " We should have no hesitation in enjoining the execution of the law, if it provided no compensation, without declaring it void. This would do justice to the individual without defeating the objects of the law." " We would continue the injunction till the company had made the compensation, without imposing on the owner any burthen of seeking or pursuing any remedy, or leaving him exposed to any risk or expense in obtaining it. The duty of the legislature is to provide for compensation, and of the company to make it, simultaneously with the disseizin of the owner and the appropriation of his property to the purposes of the law."

Under any view of the case, I am of opinion that the defendants had no right to enter, except to make their survey; and the only question remaining is, whether this court should interfere by its injunction.

It is a case where the company claim the right to enter, and

have entered, under color of law, without having complied with the requirements of that law.

In the case of *Buonaparte* v. *The Camden and Amboy Co.*, already cited, the court, in treating of the remedy, say, "If his rights of property are about to be destroyed without the authority of law, or if lawless danger impends over them by persons acting under color of law, when the law gives them no power, or when it is abused, misapplied, exceeded, or not strictly pursued, and the act impending would subject the party committing it to damages in a court of law for a trespass, a court of equity will injoin its commission."

In this case, according to my view, the company have exceeded their power, and not strictly pursued their remedy, and therefore brought themselves within the operation of the above principle; and I am, therefore, of opinion, that the injunction should be continued until the company shall have agreed with the complainant, or established their rights according to the provisions of the ninth section of their act of incorporation.

Order accordingly.