This is a bill for specific performance of a contract for the sale of lands at the corner of Third avenue and North Seventh street, Newark. The contract was dated February 10th, 1926, and provided that the title was to be closed on March 10th. On February 24th condemnation proceedings were instituted against the property by the board of education of Essex county. On March 27th a stipulation to discontinue was entered into which was recorded April 1st. The contract calls for a clear title and among other things that "vendors further agree that there will be no default in any of the terms of the present prior mortgages on said premises at the time of settlement so that same can be foreclosed," and "vendors covenant, warrant and represent that permits have been granted for the erection of a building to contain four stores and two flats on the corner and a four-family house on the remainder of a plot relative to which the vendors further covenant, warrant and represent he has plans, which plans and permits shall be turned over to the vendee without any further cost to it." Defendant contends that time was of the essence of the contract as of March 10th, 1926, and as condemnation proceedings were in force against the property at that time, clear title could not be given.
The testimony of the defendant's witnesses is positive in asserting that the property was desired for immediate building purposes. This is borne out by the fact that complainant agreed at the time of closing title to deliver to defendant plans *Page 514 
and permits for the proposed new building, the cellar of which had been at that time partially excavated by the defendant.
In the case of Agens v. Koch, 74 N.J. Eq. 528 (at p.535), Vice-Chancellor Emery said: "It is my conclusion upon the whole evidence that in this case the time for passing the title fixed by the provisions of the contract and its extension was of the essence of the contract by reason of the object of the vendee in making the purchase for the purpose of immediate building thereon for the purposes of trade, which purpose of immediate improvement was known to the vendors at the time of making the contract. * * * The essentiality of time in the performance of contracts made under such circumstances should not be disregarded."
To the same effect are the cases Gerba v. Mitruske, 84 N.J. Eq. 141,
and Newark v. Lindsley, 114 Atl. Rep. 794.
Another fact that leads me to the conclusion that the parties meant time to be of the essence of the contract is that the title was to pass in one month from the signing of the contract, which would enable defendant to have the spring and summer months for the work of construction.
The next question then is, Was the title clear on March 10th, 1926? There were condemnation proceedings pending against it. I have not found any New Jersey cases directly on this point.
However, in Hunt v. Inner Harbor Land Co.,214 Pac. Rep. 998, the court held (at p. 999): "An executory contract to convey has the effect of vesting the equitable estate in the vendee, leaving in the vendor, the naked legal title. As the equitable owner of the land, the vendee is entitled to any award which may be made on condemnation of the property. Wherefore, appellant contends that respondent can look to the Flood Control District for compensation; that the money he thus is entitled to receive from that source will stand in lieu of the real property which appellant contracted to convey to him, and that therefore there was no warrant for the rescission of the contract.
"The contention lacks merit. The fact that upon the execution *Page 515 
of the contract respondent became the equitable owner of the property, and as such would be entitled to any award which might be made on condemnation of the land, did not deprive him of the benefit of appellant's covenant to convey to him the legal title to the land, clear of all encumbrances. The equitable ownership of a vendee under an executory contract neither satisfies nor releases his vendor's contract to convey to him the legal title free from encumbrance. The covenant refers to title to land, not to title to personal property. Therefore, if by reason of a subsequently commenced condemnation suit, the vendor at the time when he should execute the deed, is not able to give that title to the land which he covenanted to grant, his vendee may rescind the executory contract and sue for the return of any purchase-money which may have been paid by him before the condemnation suit was instituted. * * *
"Appellant claims that the commencement of the condemnation action excused it from performing its contract to convey an unencumbered title to the land. Even so, appellant is not entitled to retain moneys which it accepted as the consideration for that good and unencumbered title which it expressly obligated itself to convey."
And, in Miller v. Calvin Phillips Co., 87 Pac. Rep. 264, it is held (at p. 265): "It seems to us too plain for extended discussion that under the allegations of the complainant the respondent was unable to obtain that for which he contracted, and that it would be inequitable to compel him to pay for anything less. No matter what the technical definition of `encumbrance' may be, the language of the contract is plain and specific. `It is agreed that if the title to said premises is not good, or cannot be made good within thirty days of the date of delivery of the abstract, it shall be optional with the purchaser whether the title pass subject to any defect that may be found, or the earnest money shall be refunded.'
"Can it be said with any degree of reason that after the commencement of the condemnation proceedings, and the filing of the lis pendens by the railroad company, a good title without defect could have been given by appellant? It may be *Page 516 
that a conveyance any time before the condemnation proceedings culminated in vesting the title in the railroad company would convey to the grantee the right to receive the damages allowed for the taking; but the value of the damages for the taking was not the subject of the contract — was not what the respondent expected to buy, or the appellant intended to sell. Under such contract it has been universally decided that the grantee is entitled to a marketable title — to an indubitable title — and that he cannot be compelled to buy a law suit, or a title that will involve him in litigation, but that he has a right to a title which will enable him to hold possession of his land in peace and security."
The case of Goldstein v. Ehrlick, 96 N.J. Eq. 52, was one in which the defendant refused to take title because padlock proceedings under the Prohibtion act were pending. Vice-Chancellor Backes held that these proceedings were "a cloud upon the title sufficient to prevent the enforcement of the contract."
Further, it is a fact that on March 10th, 1926, the taxes for 1925 were a lien and not paid. Complainant admits they were not paid until May 20th, 1926. This is a violation of that term in the contract which provides that "there will be no default in any of the terms of the present prior mortgages upon said premises at the time of settlement so that same can be foreclosed." The mortgages contain the usual clauses giving the mortgagee the right to foreclose on default in payment of taxes.
Complainant insists that defendant knew of the existence of the condemnation proceedings and was willing to take subject thereto and try to make a profit from the board of education.
In the case of Goldstein v. Ehrlick, supra, it was arranged that complainant would take title upon defendant's giving an indemnity bond. Complainant claimed that defendant refused to give the bond. Defendant claimed complainant refused to take it.
Vice-Chancellor Backes said (at p. 762): "I need not decide this question of fact. The complainant was entitled to *Page 517 
the property according to the terms of the contract. He was not bound to take the bond. If he, in fact, consented to take it in lieu of a good title, he had the right to change his mind."
It seems to me that this reasoning applies to the present case. If defendant did agree to take subject to condemnation proceedings, he had the right to change his mind and stand squarely on the contract.
The complainant further insists that defendant consented to various adjournments, thereby showing that time was not of the essence of the contract as of March 10th, or if it was, it was waived; and that complainant made time of the essence as of May 21st, when defendant did not appear to take title.
The solicitor for the complainants testifies that solicitor for the defendant agreed to various adjournments down to May 17th. The solicitor for the defendant specifically denies this.
It is true that the title was not closed on March 10th, but the complainant has the burden of proof in showing that the defendant acquiesced in a material change in the written contract. This he has not done. His testimony is that defendant's counsel consented to the delay. It is uncorroborated and is denied by counsel for defendant. Moreover, there is no proof that the defendant authorized or sanctioned this change.
"In Strauss v. Rabe, 97 N.J. Eq. (affirmed on the opinion below in 98 N.J. Eq. 700), Vice-Chancellor Bentley said (at p.212): `When a vendor delivers a written contract for the sale of land to an attorney, and asks the latter to represent him upon the passing of title, without further instructions, and it is known to the purchaser that the contract, by its express terms, has fixed a final, specific day upon which the deed is to be delivered, the purchase-money paid and the other matters in the contract adjusted and concluded, the charter of the agent's powers fixes them, and the purchaser cannot thereafter claim the benefit of any treaty with the agent not found within the contract, either expressly or by necessary implication, unless the act of the agent is either expressly or impliedly ratified by his principal. If it is sought by the *Page 518 
purchaser to modify any of the terms of the contract or impose a new one in any material matter affecting the principal's right, the former must, under the cases just cited, make certain, at his own peril, that the agent's authority is sufficient to permit him to perform such act.'
"The cases referred to by the learned vice-chancellor areCooley v. Perrine, 41 N.J. Law 322; affirmed, 42 N.J. Law 623;Milne v. Kleb, 44 N.J. Eq. 378, and Dowden v. Cryder,55 N.J. Law 329."
For these reasons I will advise a decree dismissing the bill and directing the return of the deposit with a reasonable allowance for search fees and counsel fee.