On June 12th, 1931, the Union County Park Commission (hereinafter referred to as the Commission) brought proceedings to condemn for public park purposes 22.6 acres of complainants' lands situated in the township of Hillside, Union county. R.S.40:37-35. Notice of lis pendens was filed and commissioners appointed by the Supreme Court on June 23d 1931, and the commissioners directed to file their report on or before September 10th, 1931. The commissioners failed to report. No order extending the time to report was entered and the powers of the commissioners under R.S. 20:1-10 ceased. Under the statute, however, new commissioners in that proceeding may yet be appointed to assess the damages upon an application to a justice of the Supreme Court upon such notice as the justice may direct.
On April 12th, 1940, the Commission by resolution authorized a second proceeding affecting the same 22.6 acres of land, plus an additional 5.622 acres contiguous thereto. Three months later on July 26th, 1940, the lis pendens in the first proceeding was discharged, and the second proceeding commenced on November 15th, 1940. Thus it appears that the determination of the Commission to condemn the 22.6 acres of land involved in the first proceeding was not really abandoned as a matter of fact by the Commission when the second was ordered.
Not only was the determination on the part of the Commission to condemn in the first proceeding the 22.6 acres of land never really abandoned as a matter of fact, but it also appears that such proceeding by the mere filing of the discharge of the lien of the notice of lis pendens was not abandonment as a matter of law as provided for by R.S. 20:1-30. The statute provides that the proceedings "may" be abandoned at any stage of the proceedings up until twenty days after verdict of the jury,"upon payment to the owners and other parties who have appeared before the commissioners or the jury of their reasonable costs, expenses and counsel fees to be determined by a justice of the Supreme Court or judge of the Circuit Court, and upon filing a discharge of the lien *Page 69 
of the notice of lis pendens." (Italics mine.) In TeaneckTownship v. Mercer, 124 N.J. Law 120; 11 Atl. Rep. 2d103, the Court of Errors and Appeals held in construing the statute: "The statutory right of the township to abandon the proceedings to condemn is conditioned upon the payment of the reasonable costs, expenses and counsel fees. * * * The conditionmust, in some way, be met." (Italics mine.) Complainants' counsel was at liberty to apply to a justice of the Supreme Court or a judge of the Circuit Court to fix such costs, expenses and counsel fees, but no duty so to do is imposed upon such counsel by express provision or implication. And such application, if made, would carry with it implied acquiescence on the part of the complainants in such abandonment, which counsel for complainants under the circumstances had a right and a duty to avoid.
It is concluded, therefore, that the first proceeding was not abandoned in fact or in law when the second proceeding was instituted.
The complainants bring this bill of complaint to enjoin the second condemnation proceeding.
On the return of an order to show cause issued on the filing of the bill the Commission in answering affidavits gave as its reasons for not prosecuting to completion the first proceeding in the intervening nine years, (1) the "reason for the decision of the Park Commission not to spend capital funds in the depression period for the acquisition of land was the program urged on public bodies by the Federal Government to spend their available funds on projects that would create jobs." Conceivably, the development of complainants' lands for park purposes would be such a project. And (2) "During the years from 1935 to 1938 there was a continuous movement on foot in Hillside and Union to press for parking of the Elizabeth River through these communities and during those years the Park Commission was urged by delegations from these communities to acquire lands and proceed with the project. * * * As the result of a reconsideration of this project the Commission came to the conclusion that it was necessary and desirable to acquire the entire tract of land of the complainants consisting of approximately twenty-seven acres." *Page 70 
Complainants contend that the second proceeding was not commenced in good faith.
It appears that on January 9th, 1931, the Commission adopted a resolution authorizing an offer to complainants of $45,000 for the 22.6 acres, and actually offered to complainants the sum of $43,000, which was refused. On April 12th, 1940, an offer of $31,000 was made but this offer included an additional 5.622 acreage. The 22.6 acreage alone was as of September 8th, 1930, appraised by William A. Boyle, realtor, at $78,000, and the 28.222 acreage was by Bertram B. Miller, realtor, appraised at $128,569. The minutes of the Commission during the nine intervening years and as late as April 12th, 1940, contain references to negotiations with the complainants for the purchase of the land, and that progress was up until the last mentioned date reported from time to time to the Commission. After the Commission on April 12th, 1940, made its offer of $31,000 for the original 22.6 acres plus additional acreage of 5.622 which was refused, the second condemnation proceeding was commenced on November 15th, 1940, and this, notwithstanding that the Commission knew that by the act of Eminent Domain the value of the land to be taken must be determined as of the date of the filing of the petition, and that the value of complainants' 22.6 acreage had in the interim between June 12th, 1931, and November 15th, 1940, depreciated substantially.
It is concluded that the Commission proceeded in this matter under an erroneous conception of its legal right and unwittingly in violation of the constitutional and statutory rights of complainants.
It is such common knowledge as that the court may (aside from the evidence in this case) take judicial notice of the fact that property values have greatly depreciated in the last nine years due to the world-wide depression. Such knowledge is also imputable to the Commission.
Complainants had the unquestioned right to believe that the first condemnation would be completed because of the negotiations from time to time. In the meanwhile, title to complainants' land from 1931 to 1940 was clouded and blighted and rendered defective by the lis pendens (Hartman *Page 71 
v. Church Construction Co., 101 N.J. Eq. 512; 139 Atl. Rep. 484;affirmed, 103 N.J. Eq. 371; 143 Atl. Rep. 917), and complainants throughout the intervening years were obliged to pay taxes.
And another thing. If the second proceeding is not enjoined, the constitutional right of complainants to "just compensation" will be denied and complainants will also suffer irreparable loss and damage in view of the fact that the value of the 22.6 acres of land involved therein have in the intervening nine years greatly depreciated, and the further fact that the commissioners in that proceeding will be by the statute (R.S. 20:1-9) restricted in arriving at what is a just and equitable appraisal of the value of the property, and an assessment of the amount to be paid therefor as of the date of the filing of the petition and order thereon, namely, April 12th, 1940.
"It has come to be generally recognized that injunction against the unlawful or improper exercise of the power of eminent domain constitutes an independent head of equity jurisdiction, uncontrolled in its exercise by the principles which regulate injunctive relief against trespass. * * * Injunction, in this class of cases, is a matter of strict right, not of equitable discretion; although it is true that special equities, such as acquiescence or estoppel, may constitute a defense. * * * It is most essential to the preservation of the rights of private property, to the protection of the citizen, and to the preservation of the best interests of the community, that all who are invested with the right of eminent domain, with the extraordinary power of depriving persons, natural or artificial, without their consent, of their property, and its possession and enjoyment, should be kept in the strict line of the authority with which they are clothed, and compelled to implicit obedience to the mandates of the constitution. * * * The owner of the land has the right to say that, unless they keep within the strict limits prescribed by law, they shall not disturb him in the possession and enjoyment of his property. * * *" 5 Pom. Eq.Jur. (2d Ed.) ch. 20 ¶ 465. (Italics mine.) See, also, 2Beach on Injunctions ¶ 1013.
The instant case is one where it is attempted to appropriate the lands of complainants, without complying with the legal conditions precedent, either constitutional or statutory. In such case for the full protection of those rights injunction is necessary. Ross v. Elizabeth Town and Somerville Railroad Co.,2 N.J. Eq. 422; Browning v. Camden and Woodbury *Page 72 Railroad and Transportation Co., 4 N.J. Eq. 47; Higbee Riggs
v. Camden and Amboy Railroad Co., 19 N.J. Eq. 276; Morris Canaland Banking Co. v. Mayor, c., of Jersey City, 26 N.J. Eq. 294.
Preliminary injunction in the cited cases was granted, and this exercise of the jurisdiction was in Hart v. Leonard,42 N.J. Eq. 416, 419, by the Court of Errors and Appeals, expressly approved.
No legal reason exists why the Commission may not proceed with and complete the condemnation proceedings commenced on June 12th, 1931.
Injunction will issue restraining the Union County Park Commission, its members, attorneys, officers and agents from further proceeding against complainants in the condemnation proceeding commenced November 15th, 1940, in so far only as such proceeding relates to and embraces the taking of complainants' lands described in the proceedings instituted by the Commission on June 12th, 1931.