Riehle v. Heulings.

---

ANNA M. RIEHLE

*v.*

ALBERT C. HEULINGS.

Where a right of way is appurtenant, and has been expressly granted to the adjoining land-owners, their heirs and assigns forever, non-user alone will not forfeit or extinguish it.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. S. K. Robbins,* for complainant.

*Mr. F. Voorhees,* for defendant.

THE CHANCELLOR.

This suit is brought to obtain a perpetual injunction restraining the defendant from continuing to obstruct a private way

Riehle *v.* Heulings.

which the complainant claims to be entitled to over the defendant's land, and from preventing or interfering with the use of the way by the complainant. The premises of the parties adjoin each other. They are houses and lots in Moorestown on which they respectively reside. The complainant's property lies on the east side of the defendant's. In 1852 the defendant's father, Israel W. Heulings, owned both properties, and he then conveyed that which is now owned by the complainant to Mary E. and Henrietta Woodward by deed, conveying the lot by description of metes and bounds, together with all and singular the buildings &c., and " together, also, with the privilege of the use of a lane or passage-way of twelve feet in width, to run from the public street along the westerly side of said lot (on said Heulings's other lot) to the back end thereof ; " the use of which lane or passage-way, the deed declared, was thereby granted to the grantees, their heirs and assigns forever, to have and to hold the land, with the appurtenances, to the grantees, their heirs and assigns, to their only proper use, benefit and behoof forever. The deed was duly recorded. The Woodwards conveyed the property to Ann Warrington in 1858, but though the deed to her conveys the land, with its buildings, improvements, rights, liberties, privileges, hereditaments and appurtenances, it makes no special mention of the right of way in question. The property was conveyed in 1876, by commissioners appointed by the orphans court, in partition, to Joel Cadbury. The deed from the commissioners conveys it with all and singular the buildings, improvements, ways &c. Cadbury conveyed it, in 1882, to the complainant. The defendant's adjoining lot was owned by Israel W. Heulings until 1880, when he conveyed it to his son, the defendant. In August, 1882, the defendant, without the complainant's consent, put locks on and locked the gate (it was a double one) at the terminus of the drive-way in question on the street (it had never previously been so fastened as to prevent the use of the way by the owners or occupants of the complainant's property), and obstructed the way itself with lumber and other building materials, and has ever since continued to exclude the complainant from the use of the way. He claims a right to do

so on the ground that the right of way was granted to the Woodwards as a personal right, to expire when they should cease to use the property; that when the property was sold to Ann Warrington, his father, who was the agent of the Woodwards in selling it, expressly agreed with her that she was not to have the right of way, and therefore caused it to be omitted from the deed to her; that she never claimed the right, but whenever she used the way, previously obtained his father's permission, and that his father and he, as his grantee, have had the exclusive use of the way ever since the conveyance to her, a period of more than twenty-seven years.

The right of way was never released in writing. The owners of the complainant's lot were never excluded from it previously to 1882. Whether Ann Warrington claimed the right to it does not appear; the evidence on the subject is conflicting. Joel Cadbury did not claim it; he did not know of the existence of it until after he had sold his property.

The way was appurtenant to the complainant's property. Ways appendant or appurtenant are such as are incident to an estate, one terminus being on the land of the claimant. They must inhere in the land, concern the premises, and be essentially necessary to their enjoyment. *Washb. on Ease.* 217. The barn on complainant's land stands and fronts as it did when the Woodwards owned the land, and has so stood and fronted ever since that time. It is on the rear of the lot, about nine feet from the defendant's line, and fronts westwardly toward the defendant's lot. The doors of the carriage-house and stable partly open toward the defendant's land. There never has been any fence on the line of the defendant's land in front of the barn. The line fence between the lots has always extended from the street back to a point about nine or ten feet distant from the northwesterly corner of the barn, and from thence to that corner of the barn there has been, as there still is, a fence on the complainant's land. There was no gate in the latter fence through which a carriage could pass until the complainant was compelled, by the shutting up of the way in question, to make one. The grant of the right of way evidently was for use in connection with the

Riehle *v.* Heulings.

complainant's land. It was, it is admitted, made for the convenience of the owners of that property, in their use and occupation of it, and is essential to the enjoyment of it. It will be held to have been and to be appurtenant to the property. The right does not appear to have been lost or to have been ever relinquished. A right of way is never presumed to be in gross when it can fairly be construed to be appurtenant to land. A right of way cannot be released, abandoned or surrendered by a mere parol agreement. The right in this case is the privilege of the use of a lane or passage-way of twelve feet wide. It was granted in connection with the conveyance of the lot—by the same deed —for use in connection with the lot, and for the convenience of the owners thereof; and the grant was to them, their heirs and assigns forever.

If the fact were that the lane or passage-way has not been used for the last twenty-seven years, except by express permission from the defendant or his father, it would not bar the complainant from a right to relief. The right in question exists by grant, and non-user alone will not forfeit or extinguish it. It is by no means satisfactorily proved that Ann Warrington did not use the lane as of right, and Cadbury did not know that the right existed, and hence asked permission. Israel W. Heulings testifies that he never did anything to exclude the owners of the complainant's lot from the use of the lane, and the evidence is that no attempt to do so was ever made until August, 1882. There is no evidence that the right was ever denied until the last-mentioned date. The complainant is entitled to the relief she seeks, and there will be a decree accordingly.