### THE CITY NATIONAL BANK OF SALEM

*v.*

### CAROLINE W. VAN METER.

[Filed October 31st, 1899.]

Where complainant had acquired an easement over defendant's land for the ingress of light and air to a window of his building, he does not surrender such right by tearing down the old building for the purpose of erecting a new one where it clearly appears from the plans for the new building that a window will be in substantially the same place as was the window of the old building.

In March, 1894, the owners of a building known as the Star Hall building, on the corner of Market street and West Broadway, in the city of Salem, filed a bill to enjoin the present defendant, Caroline W. Van Meter, the owner of an adjoining property, from erecting any structure which would obstruct the ingress of light and air through a window in the Star building.

On February 24th, 1896, a final decree was signed in the said cause restraining the defendant from erecting any building or other structure in front of the window, in the first story of the north wall of the Star Hall building, which might interfere with the obstruction or access of light or air to the said building through said window. The opinion in that case is reported in *Greer* v. *Van Meter, 9 Dick. Ch. Rep. 270.*

The Star Hall building has since been sold, and title to it came into the hands of the present complainant. During the early part of 1898 the complainant caused to be prepared plans for the erection of a new building on the site of the Star Hall building, and said plans designated a window in the same loca-

tion as the window protected by the injunction in the former case.

The defendant knew of the purposes of the complainant to put such window in the new building. The complainant demolished the old building, and proceeded to erect the new building and finished it. On June 20th, 1898, when the cellar walls of the new building were built up to the surface of the ground, on the side next to the defendant's property, the defendant caused a brick wall eighteen inches in thickness to be built in a position which will exclude all light and air from the new window, as it would have excluded it from the old window. The new building is occupied as a bank, and the new window is intended to furnish light to the toilet-room, which, without such window, is too dark for such use without artificial light.

It appears that before the obstructing wall to the defendant's building was built up to the bottom of the old window, notice was served upon her by the complainant, forbidding the completion of her wall. The old building was used as a clothing store, was two stories in height, fronting sixteen feet on Market street.

The new building is three stories in height, and is four feet wider than the old one. The interior arrangements of the new is different from the arrangements of the old.

*Mr. William H. Hilliard*, for the complainant.

*Mr. Norman Grey*, for the defendant.

REED, V. C.

The decree in the former case established the right of the owners of the Star Hall building property to an easement in the property of the defendant, the extent of which easement was the right of access of light and air across defendant's property through this window as light and air had been admitted in 1864.

The insistence made upon the part of the defendant is that the right to access to light and air through the old window was

lost when the building in which the old window was placed was demolished.

Whether the owner of an easement has abandoned his right is a question of intention. *Veghte* v. *Raritan Water Power Co., 4 C. E. Gr. 142; S. C., 6 C. E. Gr. 463; Johnson* v. *Hyde, 6 Stew. Eq. 632; McConnell* v. *American B. Pm. Co., 14 Stew. E7. 447.*

The rule in respect to the extinguishment of easements by an alteration has been stated thus : when the dominant tenement is so altered as to change the nature of the easement, the easement is extinguished. But the easement is not extinguished if the use is the same in substance though not in quality. *10 Eng. Rul. Cas. 294.*

In *Luttrell's Case, 4 Co. 86a, 89a,* one Cottrell claimed the right by prescription to have a stream run from a place called Head Wear to his two fulling mills. The fulling mills have been torn down and grist mills built in their stead, and for this reason it was insisted that Cottrell had lost his prescriptive right. But it was held that the implied grant to have a watercourse was to his mill and that he might alter the quality of his mill, provided no prejudice should arise thereby, either by diverting or stopping the water, as it was before. "So," it was said, arguendo, "if a man has an old window to his hall, and afterwards he converts his hall into a parlor or any other use, yet it is not lawful for the neighbor to stop it, for he shall prescribe for all the light in such part of his house."

In *Carlisle* v. *Cooper, 6 C. E. Gr. 576, 595,* Mr. Justice Depue, in speaking of the extent of the right to flowage of water, said : "The owner of the easement is not bound to use the water in the same manner or apply it to the same mills. He may make alterations and improvements at his pleasure, provided no prejudice thereby arises to the owner of the servient tenement in the increase of the burden upon his land. * * * A change in the mode of use or the purpose for which it is used, or an increase in the capacity of the machinery which is propelled by the water, will not affect the right if the quantity used is not increased and the change is not to the prejudice of others."

Says Mr. Washburn :

"The act must be such as indicates an intention to extinguish the easement, or it must be something which enhances the burden upon the servient estate to the injury of some against the consent of the owner thereof." *Washb. Easem.* 708.

The question involving the destruction of the right to the enjoyment of light by reason of changes made in the building by the owner, the dominant tenant, was much discussed in the house of lords in the leading case of *Tapling* v. *Jones, 11 H. L. Cas. 290.* In that case the plaintiff, while entitled to a right to light through certain windows, pulled down the houses and built on their site a new warehouse.

In doing so he altered the position and enlarged the dimensions of the windows previously existing and increased the height of the building. He also put in new windows. The new windows and lights were so placed that it was impossible for the owner of the adjacent property to block them without also blocking those parts of the new window which occupied the site of the old windows.

The question was whether the owner of the servient tenement, for the purpose of preventing the access of light through the new windows from ripening, by user into a right, could block them up, although, by such an act, he must necessarily obstruct the new windows, which apparently occupied the same place as the old windows. It was held (overruling *Renshaw* v. *Bean, 18 Q. B. 112,* and *Hutchinson* v. *Copestake, 9 C. B. (N. S.) 863*) that he could not do so.

The point of the decision pertinent to the present case is that it was assumed that, although the plaintiff had torn down one and erected another building with new and enlarged windows, yet his right to receive light through the new windows remained unextinguished.

In *Newson* v. *Pender, 27 Ch. Div. 43,* an owner of an ancient dwelling which had numerous windows pulled it down and rebuilt it. A few of the windows in the new house included the space occupied by ancient windows, but were of larger dimen-

sions. An *ad interim* injunction was granted to stay the erection of a building by the defendant which would materially interfere with the light coming to the complainant's windows.

In *Scott* v. *Pape, 31 Ch. Div. 554,* a building with ancient lights was torn down, and new ones built higher than the old and lighted by larger and more numerous windows. The east wall of the new building was advanced so as to include part of what had been previously a part of the yard. It was held that no alteration in the plan of the windows of the dominant tenement, either by advancement or setting back the buildings, would destroy the right to light, so long as he could show that he is using through the new aperture in the wall of the new building the same or a substantial part of the same light which. passed through the old aperture into the old building.

It was held though the right was not in gross but one which must be claimed in respect to a building, yet it may be claimed in respect to any building which is enjoying the whole or a substantial part of the right which passed into the dominant tenement through the old aperture. It was also held in the last two cases that while an intention to abandon the right to light was one of fact, yet the destruction of one building and the erection of another building with windows which used the same light, where there had been no loss of evidence and no incapacity to prove the identity of the old light, and that which had been interfered with, was not proof of an intention to abandon.

The above case deals with ancient lights. But the question of abandonment or extinction is precisely the same in whatever manner the light may have arisen. Whether the right arose by prescription, which presumes a grant, or by express or implied covenant or reservation, or by an implied grant resulting from the sale of a part of the premises which has upon it an open and continuous easement, matters not, for the question is not how the right arose, but whether, if once existing, it has been extinguished.

It will be extinguished, undoubtedly, by any conduct on the part of the owner of the dominant tenement, which unequivocally exhibits an intention to abandon it. Such an act is in-

stanced by Chief-Justice Shaw in his opinion in *Dyer* v. *Sand-ford, 9 Metc. 395, 402:* "As where one takes down a building in which a window was placed and erects on the site a permanent tenement, so constructed as not to require or even permit a window similarly situated." So, if such a building is removed and the site is turned into a park or garden, I have no doubt the right would be lost.

So, again, if the building is torn down and the locality of the old windows, from delay in rebuilding or from a failure to preserve evidence of their situation, cannot be proved, the same result would follow.

But none of these conditions exist in the present case.

The plans for the erection of the new building admittedly showed a window in the same place as the old. The defendant was notified of the intention of the complainant to erect such new building with such a window. The new building was erected with reasonable expedition, according to the plans.

Therefore, the right still exists, and a decree will be advised in accordance with the prayer of the bill.