The complainants filed their bill asserting documentary and record ownership of a right of way for foot passage and easements of unobstructed light and air over certain lands of the defendants, and praying injunctive relief against interference therewith. The defendants concede that said easements were created by grant and as appurtenant to premises 2309 Pacific Avenue, in Atlantic City, owned by the complainants. The defendants further concede the right of the complainants to unobstructed light and air, but contend that the rights of way have been limited and, in part, lost to the complainants through adverse possession of the servient tenements by defendants and their predecessors in title for some 24 years.
The last owners of all the lands involved in this controversy were Beni Kornblau and Louis Weintraub who, in September, 1915, purchased a rectangular plot on Pacific Avenue, 100 *Page 341 
feet in front by 150 feet in depth. They divided one-half of this plot into five lots, two on Pacific Avenue, now 2307 and 2309, and three to the rear, now 2309 A, 2307 A and 2307 B Pacific Avenue. Only lots 2309, 2307 B and 2309 A are directly involved in this litigation. As an aid to visualization of the five properties and the servient lands, I add this sketch:
[EDITORS' NOTE: SKETCH IS ELECTRONICALLY NON-TRANSFERRABLE.]
The first land to be conveyed by Kornblau and Weintraub from out their plot was the complainant's lot, 2309 Pacific Avenue, 25 feet by 70 feet. The deed was dated January 4th, 1921, and was duly recorded January 5th, 1921; the grantee was one Morris Fishman. After a description of the lands sold and conveyed to Fishman, the following covenant appears in the deed:
"Under and subject to the right of way for ingress and egress for the party of the first part, their heirs, executors, administrators, servants, agents and tenants and assigns, in common with the party of the second part, his heirs, executors, administrators, servants, agents, tenants and assigns in, over and along that portion of the premises in questions. BEGINNING * * *."
The land made servient by this covenant was a four-foot wide strip running along the seventy-foot easterly line of the lot conveyed.
The deed to Morris Fishman also contained the following covenant creating an additional right of way, and the easement of unobstructed light and air: *Page 342 
"Together with a right of way for the said party of the second part, his heirs, executors, administrators, servants, agents, tenants or assigns, in common with the party of the first part, their heirs, executors, administrators, servants, agents, tenants or assigns, for a foot passage only in, over and along the certain tract hereinafter described which said tract shall also remain open and unobstructed for the purpose of light and air, said tract being bounded and described as follows: BEGINNING * * *."
The land made servient to these easements was 25 feet by 12 feet, and immediately adjoined the 25 foot rear line of the lot conveyed.
It should be here interjected that the four-foot right of way was substantially widened to six feet by the imposition of the easement upon an adjoining two-foot wide strip of the grantors. As the situation now exists, there is a right of way over a six-foot wide alley leading from Pacific Avenue and running between complainants' building and a similar building owned by the defendants Emilio and Concetta Corcione. Each of these buildings completely covers (except for the six-foot alley) the owner's lot. Complainants use their building for the operation of an Italian restaurant and an apartment house; the defendants use their building for identical purposes.
Two and a half months after the conveyance of Kornblau and Weintraub to Fishman was recorded, they conveyed the premises 2309 A Pacific Avenue, 16.9 feet in width by 80 feet in depth, now owned by the defendant Julia Corcione DePhillipo, to one Sarah Alten. A new easement was created; after the description of the land conveyed appeared the following covenant:
"Together with and subject to a right of way for the said party of the second part, her heirs, executors, administrators, servants, tenants and assigns, in common with the parties of the first part, their heirs, executors, administrators, servants, tenants and assigns, in, over and along a certain strip of land bounded and described as follows: BEGINNING * * *."
The land described as servient was the present six-foot wide alley leading in from Pacific Avenue, a 2.5-foot wide strip beside and to the rear of the dwelling on the lot conveyed, the 25 by 12 feet parcel to the rear of 2309, and all *Page 343 
of the land between the front porch of 2307 B Pacific Avenue and the rear walls of 2307 and 2309. Excluded from the imposition of the easement was a strip of land 5.9 feet wide by 14.4 feet in length immediately in front of the porch of 2309 A and to the rear of the 25 by 12 foot parcel.
April 15th, 1921, Kornblau and Weintraub conveyed the land now designated as 2307 B to one Elias Weinbach. The lot conveyed was 16.1 feet in width by 80 feet in depth, and the deed contained this covenant:
"TOGETHER with and subject to a right of way for the said party of the second part, his heirs, executors and administrators, servants, tenants and assigns, in common with the parties of the first part, their heirs, executors, administrators, servants, tenants and assigns, in over and along a certain strip of land bounded and described as follows: BEGINNING * * *."
The description of the lands made subject to this easement was identical with the description of the lands over which rights of way were established in the deed to Sarah Alten.
The property 2309 Pacific Avenue was conveyed by Fishman to Equitable Title, Inc., by the latter to Guarantee Trust Company, surviving trustee under the will of George H. Lutz, deceased, and by it to the complainants. Each deed contained the covenants respecting the easements of way and unobstructed light and air which I have quoted from the deed to Fishman.
The property 2309 A Pacific Avenue, William Alten a witness called by the defendants testified, was purchased by him from Kornblau and Weintraub, and title taken in the name of his wife, Sarah Alten. Mrs. Alten died seized of the premises. Following her death, her surviving children and heirs-at-law, on May 29th, 1936, conveyed the premises to their father, William Alten. December 7th, 1945, he conveyed the premises to the defendant Julia Corcione DePhillipo. The deed from the heirs of Sarah Alten to William Alten and the deed from William Alten to Mrs. DePhillipo contained provisions respecting the easements of way identical to those I have quoted from the deed to Sarah Alten.
The property 2307 B Pacific Avenue was conveyed by Elias *Page 344 
Weinbach to Michel and Bertha Guziewicz, they conveyed to Mary Beumer, she conveyed to The Atlantic Coast Building and Loan Association of New Jersey, it conveyed to George L. Cook, and he conveyed to the defendants Emilio and Concetta Corcione. All of these deeds contained provisions respecting rights of way identical to those I have quoted from the deed to Weinbach.
All of the conveyances of all three properties were duly recorded, and certified copies thereof are in evidence. Thus it was conclusively established that, on the documentary and record title of the three properties involved, the complainants would be entitled to a favorable decree. What of the contention of the defendants?
The defendants, when they interposed a defense of adverse possession of their lands made servient to rights of way, assumed the burden of proving all of the elements essential to the establishment of such a defense in this court. They have not carried that burden. The principle on which the doctrine of title by adverse possession rests is well settled. The possession must be actual and exclusive — adverse and hostile — visible or notorious — continued and uninterrupted. The question whether possession has been held adversely and continuously for a period of 20 years, is one of fact. Foulke v. Bond (Court of Errorsand Appeals), 41 N.J. Law 527, 545.
Equity abhors a forfeiture. Walter v. Danisch (Court ofErrors and Appeals), 133 N.J. Eq. 127, 131; 29 Atl. Rep.
2d 897. However, a private right of way, whether created by implication or express grant, may be effectually defeated by an open, notorious and adverse possession of the land, uninterrupted for the full period of 20 years. Street v. Griffiths (Courtof Errors and Appeals), 50 N.J. Law 656, 658; 14 Atl. Rep. 898;17 Am. Jur., Easements, ¶ 145. The rule that every purchaser of land takes title subject to any existing easements therein, referred to in the deed by which he acquires title, or that may be ascertained by reference to his chain of title as spread upon the public records is apt to the present case. 17 Am. Jur.,Easements, 128, 132; Mitchell v. D'Olier (Court of Errors andAppeals), 68 N.J. Law 375, 384; *Page 345 53 Atl. Rep. 467; 59 L.R.A. 949. The defendants, when they took title to premises 2309 A and 2307 B Pacific Avenue, accepted deeds which definitely imposed easements upon a part of the land being conveyed to them. And, when Mrs. DePhillipo purchased 2309 A, her father Emilio Corcione, for her, applied to the South Jersey Title and Finance Company for title insurance. A policy was issued on this application and it was accepted by Mrs. DePhillipo. That policy specifically describes the easements of way and specifically excepts the "rights of adjoining owners," tenants and mortgagees in common with the insured in, over and along the southerly 17.9 feet of the land conveyed to Mrs. DePhillipo. Furthermore, in the deed by which Emilio Corcione and Concetta, his wife, took title to 2307 B the rights of way over the land described were granted to them "in common with adjoining owners, tenants and mortgagees." Both Mrs. DePhillipo and her parents had warning, therefore, that they should look to the title of the complainants and other adjoining owners and ascertain what rights of way, if any, had been granted to them. Had they searched the records they would have learned that in each of the several deeds passing title from Kornblau and Weintraub to the complainants, the rights of way now in dispute were defined and described.
A distinction is recognized between easements created by deed and those obtained by prescription, and non-user alone, for however long, will not extinguish an easement acquired by deed.Riehle v. Heulings, 38 N.J. Eq. 20; affirmed, 38 N.J. Eq. 652;17 Am. Jur., Easements, ¶ 141; Dill v. Board of Education ofCamden (Court of Chancery), 47 N.J. Eq. 421, 436;20 Atl. Rep. 739; 10 L.R.A. 276. For, no duty is cast upon an owner of a right of way created by deed to make use thereof or to enjoy the same as a condition to his right to retain his interest therein.Arlington Realty Co. v. Keller (Court of Errors andAppeals), 105 N.J. Eq. 196, 198; 147 Atl. Rep. 437.
An easement created by deed may also be extinguished by abandonment, and there may be an estoppel against claiming such an easement. Abandonment is, however, a question of intention, and the burden of proving an abandonment is, of *Page 346 
course, upon the party alleging it; the abandonment must be established by clear and unequivocal evidence of decisive and conclusive acts. An intention to abandon is not necessarily disclosed by the construction and continuance of a wire fence upon servient lands or by a temporary obstruction which may be readily removed when it is desired to use the easement.Arlington Realty Co. v. Keller, supra; 17 Am. Jur.,Easements, ¶¶ 142, 143.
Prior to the institution of this suit the complainants removed a wire fence which ran from the most northerly corner of their building in a northwesterly direction, then in a more westerly direction and then in a southwesterly direction to the building on premises 2311 Pacific Avenue. The land which had been enclosed thereby was the disputed plot, 25 by 12 feet and an additional strip to the rear thereof about 25 feet in length by 24 inches in width. Since the institution of this suit the defendants have erected a new and more substantial wood and wire fence running from the most northerly corner of complainants' building to the porch rail of 2307 B and have paved the area so enclosed with concrete.
The parties to the cause, once friends, are now violently antagonistic. Resolution of the disputed facts necessitated a judging of probable interest and the credibility of the witnesses. I carefully observed each witness as he or she testified: The witnesses Ernest Lord, Wilbert Fishman, Samuel Martino and the complainant Nicoletta Nuzzi, all impressed me as being truthful; the testimony of most of the witnesses for the defense was obviously given in a spirit of partisanship, and was unreliable.
William Alten was called as a witness by the defendants. His testimony as to important features of this case is irreconcilable with testimony given by Wilbert Fishman. I accept the testimony of the latter. He testified that his father Morris purchased and occupied the premises 2309 in the year 1921, and that he, the witness, resided there with his parents until his father sold the property, September 14th, 1931. Morris Fishman sold butter and eggs and, for a year or two following his purchase of 2309, utilized a small building that was on the lot. He then had the present three-story building *Page 347 
constructed. After the new building had been completed his employees, notwithstanding instructions to the contrary, occasionally placed used egg crates on the 25 by 12 foot parcel to the rear; children of the neighborhood also entered the court to play. In 1922 or 1923, without first obtaining permission of Mr. Fishman, William Alten erected a fence. That fence, Wilbert Fishman testified, was only a foot or 18 inches in height and was constructed of wood and chicken wire. Morris Fishman remonstrated with Mr. Alten, saying that the fence should not have been built without first getting his consent. Mr. Alten explained that it had been done to prevent children from creating a nuisance on the ground and because of the placing of egg crates there. After Mr. Alten's explanation, Mr. Fishman said that the fence might remain "as long as we could have access to clean windows or any other purpose." Wilbert Fishman further testified that, following the conversation between his father and Mr. Alten, he often passed over the enclosed land as did his father's employees in washing the rear windows of the building. He added that his mother went in and out of the enclosure by a gate which Mr. Alten had provided and, with Mrs. Alten, planted and cultivated a few flowers there.
William Alten testified that Elias Weinbach, then the owner of 2307 B participated with him in erecting the chicken-wire fence which resulted in the dispute between Alten and Morris Fishman. He said it was still there in 1945. On cross-examination, being reminded of the years which had elapsed since he said he built the fence, and asked about repairs or rebuilding, he conceded that Weinbach had made repairs from time to time. I suspect that Weinbach may have rebuilt and raised the height of the fence, which would suggest some explanation of the conflicting testimony with respect to its height and character. In this connection it should be observed that the defendants first came to know the lands in question in the spring of 1941 when Emilio (then a resident of Philadelphia) rented 2309 Pacific Avenue, and that all of the testimony produced by them, with the exception of that given by William Alten and Maurice Schiff, related only to the period from 1940 to 1946. *Page 348 
When 2309 Pacific Avenue was owned by Equitable Title, Inc., the Guarantee Trust Company as surviving trustee under the will of George H. Lutz held a mortgage thereon. There was a default and, March 11th, 1932, the owner conveyed the property to the mortgagee in lieu of foreclosure. The witness, Ernest Lord, was then the vice-president and the real estate and mortgage officer of Guarantee Trust Company. He was also president of South Jersey Title and Finance Company, which had issued searches upon or guaranteed the title to the premises. Before recommending that his company take a deed, Mr. Lord visited and carefully inspected the property. He declared that he freely walked about the lands here particularly in dispute; that there may then have been the remains of an old fence there but that there was nothing to interfere with his entry upon or passage over the land. He inspected the rear windows and the walls of 2309 to see if repairs were needed and made observations with respect to possible attachment of cables or wires which might lead to claims of easement by prescription. After his company had taken title to 2309, Mr. Lord rented it to several tenants and, before renting and after tenants removed from the building, reinspected the premises; from May, 1941, until October, 1943, he testified, there was no substantial obstruction to his entrance upon and passage over the servient lands. With his background of experience, this witness could not have failed to observe and note any substantial bar to the use of the rights of way appurtenant to the property he was inspecting.
A decree will be advised that the defendants remove the fence which they have erected since the institution of this suit, running from the rear wall of complainants' building at 2309 Pacific Avenue to the front porch of the dwelling 2307 B Pacific Avenue, and that the defendants, their servants, agents and employees be perpetually enjoined from placing any structure or obstacle of any kind around or upon their lands made servient to easements of way appurtenant to the premises 2309 Pacific Avenue. *Page 349