**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3907-23

PC CLARK PROPERTY LLC
and COMPLETE CARE AT
CLARK LLC,

      Plaintiffs-Appellants,

v.

HALSTEAD REALTY, LLC,
AMERICAN SPECIALITY
PLUMBING, HEATING &
AIR, INC. d/b/a GOOD TIDINGS,
GOOD TIDINGS
INTERNATIONAL FRANCHISING
INC. and GOOD TIDINGS
INTERNATIONAL IP INC.,

      Defendants-Respondents.

_____

Submitted October 22, 2025 – Decided January 13, 2026

Before Judges Mayer, Vanek and Jacobs.

On appeal from the Superior Court of New Jersey, Chancery Division, Union County, Docket No. C-000056-23.

Jacobowitz Newman Tversky LLP, attorneys for appellants (Evan M. Newman and Jonathan L. Weg, on the briefs).

Callagy Law, PC, attorneys for respondents (Robert J. Solomon, on the brief).

PER CURIAM

The parties to this appeal contest the scope and enforceability of a 1987 easement originally intended to provide parking to plaintiffs. To enforce their claim to a larger parcel of property subject to the easement, plaintiffs filed suit seeking declaratory, injunctive, and monetary relief. Following a bench trial, the court dismissed the complaint with prejudice. The court found plaintiffs had abandoned any right to an expanded easement and were equitably estopped from asserting new claims based on decades of acquiescence and non-use of the easement. We affirm.

I.

In the mid-1970s, Anthony and Helen DiGiovanni purchased three contiguous parcels of land designated as 1213, 1219, and 1225 Westfield Avenue in Clark. The DiGiovannis operated an electrical business located on parcel 1225. Some time after purchase, the DiGiovannis transferred their interest in parcels 1225 and 1219 to their children, Tony and Marianne DiGiovanni, who maintain their ownership through defendant holding company,

2

Halstead Realty, LLC, on behalf of American Specialty Plumbing, Heating & Air, Inc. d/b/a/ Good Tidings, and Good Tidings International Franchising Inc., and Good Tidings International IP Inc. (Good Tidings).

In 1987, the DiGiovannis entered into a long-term lease with plaintiffs' predecessor-in-interest, Clark Nursing and Convalescent Associates (Clark Nursing) to develop the remaining parcel, 1213, as a nursing facility. To satisfy Clark Nursing's parking needs, the DiGiovannis granted and recorded an easement for fourteen parking spaces, with ingress and egress over a portion of the adjacent property—1219. Evidence at trial showed the nursing home's developer submitted site plans and constructed improvements—including curbing, fencing, and paving—to accommodate precisely fourteen parking spaces, the number needed to rectify a parking shortfall that otherwise would have prevented the site plan from meeting municipal zoning codes. The area subsequently in dispute consists of five additional parking spaces outside of this improved area but located on the same lot.

After initial development, the DiGiovannis leased the five spaces to tenants unrelated to Clark Nursing over ensuing decades. The DiGiovannis fenced, maintained, and used the disputed area for their own business purposes and those of their tenants without objection from Clark Nursing.

A-3907-23

This status continued for more than thirty years. In 2022, plaintiffs, PC Clark Property LLC and Complete Care at Clark, LLC (PC Clark), acquired 1213 Westfield Avenue. Shortly afterward, PC Clark asserted a claim to the disputed area, demanding removal of the fencing and improvements erected years earlier. Defendants rebuffed their claim and plaintiffs commenced this action for declaratory, injunctive, and monetary relief, asserting an ongoing right to use the disputed area pursuant to the 1987 easement.

At trial, plaintiffs presented testimony from Bentzy Davidowitz, the vice-president of operations for PC Clark. Davidowitz testified he was prompted to claim the disputed five parking spaces soon after acquiring ownership of 1213 Westfield Avenue in 2022 and receiving correspondence from Good Tidings demanding payment for use of those spaces. This demand prompted Davidowitz to review the original site documentation and assert a claim to the disputed area containing five parking spaces. Davidowitz acknowledged his company had no historical involvement with the property and had not maintained the disputed area. He also confirmed that Good Tidings had not interfered with the use of the fourteen marked parking spaces within the original paved and fenced easement area.

Defendants presented testimony from Tony DiGiovanni and David

4

McKenna, a principal of Good Tidings. DiGiovanni testified the fourteen spaces were carved out of the property specifically to satisfy zoning requirements and that the area in dispute was never improved or claimed by the nursing home operator. DiGiovanni further described how "all that curbing and layout was done by the site development contractors for the nursing home." McKenna testified that his company continuously used the disputed area since 2001, maintained it, and had never been approached by the nursing home about the area until after the 2022 sale.

The judge credited defendants' version of events. He found defendants had "established by clear and convincing evidence that the easement as it pertains to the disputed area was abandoned by the [t]enant at the construction phase of the development." In reaching this decision, the judge noted the tenant had physically demarcated a portion of the easement through curbing, fencing, and paving, while leaving the remaining area unused, unmaintained, and without any objection by the dominant estate over more than thirty years. The judge's opinion emphasized that abandonment requires more than mere non-use; it requires a clear, unequivocal act. He concluded the tenant's deliberate construction of physical boundaries served that purpose. The judge's reliance on unchallenged testimony led to his finding that had Clark Nursing intended to

5

retain rights in the disputed area, it would have taken steps to maintain and pay tax for that portion of the parcel.

Alternatively, the judge found the improved portion was used by Good Tidings to park company vehicles, store materials, and for other business purposes. He concluded plaintiffs were equitably estopped from asserting rights over the disputed area after a prolonged period of acquiescence, active use and reliance by defendants.

This appeal follows.

II.

We apply a deferential standard in reviewing a judge's factual findings. Balducci v. Cige, 240 N.J. 574, 595 (2020). In an appeal from a non-jury trial, "we give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (citing Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-84 (1974)). We "owe deference to the trial court's credibility determinations as well because it has 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" C.R. v. M.T., 248 N.J. 428, 440 (2021) (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)).

"[W]e will defer to the trial court's factual findings so long as they are

supported by sufficient, credible evidence in the record." Saffos v. Avaya Inc., 419 N.J. Super. 244, 259-60 (App. Div. 2011) (citing 30 River Court E. Urban Renewal Co. v. Capograsso, 383 N.J. Super. 470, 476 (App. Div. 2006)). "Reviewing appellate courts should 'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Griepenburg, 220 N.J. at 254 (quoting Rova Farms, 65 N.J. at 484).

However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)) (alteration in original).

On appeal, plaintiffs contend the trial judge erred as a matter of law in concluding the easement was abandoned. They argue that mere non-use or physical modifications like curbing and fencing, even if left unchallenged for decades, do not constitute abandonment of a recorded easement. Rather, they posit abandonment requires clear evidence of intent and that the absence of formal release or express renunciation defeats any such finding. Plaintiffs

further challenge the judge's application of equitable estoppel, asserting their rights under the recorded easement runs with the land and are not subject to waiver by inaction.

Defendants urge affirmance, contending clear and convincing evidence exists to support a finding of abandonment. They maintain plaintiffs' predecessor, by developing only the fourteen designated spaces and physically excluding and fencing off the remainder, made a purposeful and permanent decision to relinquish any claim to the disputed area. Defendants emphasize the lack of maintenance, tax payments, or any assertion of rights by plaintiffs or their predecessors for over thirty years, arguing that such a course of conduct, combined with their own open and notorious use, is more than sufficient to establish abandonment. Alternatively, they argue that principles of equitable estoppel preclude plaintiffs from asserting rights inconsistent with their long acquiescence.

Under New Jersey law, abandonment of an easement requires clear and convincing evidence that the easement holder intended to permanently relinquish their rights or engaged in conduct inconsistent with the easement's continued existence. City Nat'l Bank v. Van Meter, 59 N.J. Eq. 32, 36 (1899); Freedman v. Lieberman, 2 N.J. Super. 537, 543 (Ch. Div. 1949). Abandonment

is not presumed and must be established by "clear and unequivocal evidence of decisive and conclusive acts." Nuzzi v. Corcione, 139 N.J. Eq. 339, 346 (1947). Mere nonuse, even over an extended period, does not suffice. Gera v. Szenzenstein, 130 N.J. Eq. 164, 165 (1941). More is required—namely, some overt act or course of conduct manifesting a decision to forego the right. Corcione, 139 N.J. Eq. at 346.

Here, the trial judge credited the testimony of Tony DiGiovanni and David McKenna, based on their demeanor and plausibility, and made findings well supported by both testimonial and documentary evidence, including photographic exhibits and historical tax records. The evidence established that plaintiff, while entitled to a larger easement by the terms of the recorded agreement, physically developed only the fourteen designated spaces, segregated the remaining area with curbing, fencing, and landscaping, and permitted the servient estate and its tenants to use and maintain the disputed area for their own business operations for more than thirty years. The record supports the judge's findings that plaintiffs and their predecessor failed to pay taxes or perform maintenance on the disputed area and affirmatively pursued alternative parking arrangements elsewhere without raising a claim to the area at issue. The absence of objection to defendants' open use of the property, despite numerous

9

opportunities in connection with site surveys, transactions, and lease renewals, reinforces the judge's sound conclusion of abandonment.

The judge alternatively grounded his ruling on the doctrine of equitable estoppel. Under New Jersey law, equitable estoppel bars a party from asserting rights where for years it has engaged in conduct that causes another party reasonably to believe those rights will not be enforced, and the latter so relies as to materially change its position. Mattia v. Northern Ins. Co., 35 N.J. Super. 503, 510 (App. Div. 1955).

The Restatement (Third) of Property: Servitudes § 7.6 addresses estoppel in the context of servitudes upon land:

> A servitude is modified or terminated when the person holding the benefit of the servitude communicates to the party burdened by the servitude, by conduct, words, or silence, an intention to modify or terminate the servitude, under circumstances in which it is reasonable to foresee that the burdened party will substantially change position on the basis of that communication, and the burdened party does substantially and detrimentally change position in reasonable reliance on that communication.

The judge concluded "[i]t would be inequitable to work such a drastic change upon the [l]andlord now because the [p]laintiff discovered a 'stub' of the easement of record to use in negotiating for parking spots as against a neighboring tenant." Our review of the record supports the judge's finding that

10

the servient estate (defendants and their tenants) maintained, improved, and openly used the disputed land in reliance on the dominant estate's failure to object. As such, the judge reasonably concluded it would be fundamentally inequitable to permit plaintiffs to assert easement rights after a lapse of more than thirty years, during which time defendants altered their use and incurred expenses in reasonable reliance on plaintiffs' non-assertion.

Credible evidence adduced at trial supports the judge's conclusion that plaintiffs' predecessor, Clark Nursing, abandoned whatever additional easement rights it may have possessed over the disputed land by a deliberate course of development, segregation, and acquiescence to open use by others. The resulting conduct and longstanding reliance by defendants collaterally estops plaintiffs' belated attempt to assert easement rights.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

11

A-3907-23