The present action arises out of a contract for the sale of land in Newark. The contract provided that the existing buildings were within the metes and bounds recited in the agreement, and that there were no encroachments. The down-money was paid. It was then discovered that there was great doubt as to whether the buildings were within the bounds described in the contract and whether there were encroachments. The complainant alleged that the defects could not be corrected, and filed his bill in equity seeking a cancellation of the contract and praying in that event that *Page 494 
he may have a lien upon the lands for the money paid and expenses incurred. The defendants in their counter-claim prayed specific performance. From our reading of the bill, answer and reply, it is apparent that the issue tendered to the court was whether by reason of defects the complainant was entitled to rescind, or whether a decree for specific performance should be entered.
On motion, the bill was dismissed on the single ground that the decisions of this court, presently to be noticed, have established broadly the rule that no equitable lien for the down-money exists when a vendor breaches a contract for the sale of lands. We do not consider that any such far-reaching rule has been laid down in this court, and careful study of the facts and record of the decisions will so show. On the contrary, we think that where the pleadings, as in the present case, seek specific performance, or cancellation, because of a defect in the title offered, which cannot be remedied, the purchaser is entitled to ask in equity for a judicial recognition of rescission and may then enforce in chancery a lien for the down-money.
The purchaser may seek the aid of a court of equity if he properly frames his pleadings. Fry states how in similar actions it shall be done. Section 1484, subdivision 2 is as follows:
"If the purchaser be plaintiff, he will frame his claim in the alternative, asking for specific performance or the repayment of the amount paid and the enforcement of his lien, and obtain relief accordingly."
Courts of equity in this country substantially, without exception, follow the case of Rose v. Watson, 10 H.L.C. 672, where at page 678 Lord Chancellor Westbury said: "When the owner of an estate contracts with a purchaser for the immediate sale of it, the ownership of the estate is, in equity, transferred by that contract. Where the contract undoubtedly is an executory contract, in this sense, namely, that the ownership of the estate is transferred, subject to the payment of the purchase-money, every portion of the purchase-money paid in pursuance of that contract is a part performance *Page 495 
and execution of the contract, and, to the extent of the purchase-money so paid, does, in equity, finally transfer to the purchaser the ownership of a corresponding portion of the estate."
Lord Cranworth said at page 683: "My lords, I concur in what has fallen from my noble and learned friend, in every particular. There can be no doubt, I apprehend, that when a purchaser has paid his purchase-money, though he has got no conveyance, the vendor becomes a trustee for him of the legal estate, and he is, in equity, considered as the owner of the estate. When, instead of paying the whole of his purchase-money, he pays a part of it, it would seem to follow, as a necessary corollary, that, to the extent to which he has paid his purchase-money, to that extent the vendor is a trustee for him; in other words, that he acquires a lien, exactly in the same way as if upon the payment of part of the purchase-money the vendor had executed a mortgage to him of the estate to that extent."
As we have said, this case has been followed in most American jurisdictions, including our own, and has the approval of the leading text writers. Fry Spec. Perf. 672 § 1480, is as follows: "In Rose v. Watson, W., having successfully resisted a vendor's suit for the specific performance of a contract to purchase a building estate on the ground of the vendor's representations not having been fulfilled, filed a bill to enforce his lien on the estate for deposit and installments of purchase-money with interest. The house of lords, affirming the decision of Vice-Chancellor Kindersley, held the plaintiff entitled to such lien and interest in priority to persons to whom, after the contract, the vendor had mortgaged the property; and that although some of the plaintiff's payments were made after he had notice of the mortgage.
"On the same principle the purchaser has a lien for his deposit, not only when the contract goes off for want of title, but also when it is rescinded under a condition entitling the purchaser, or the vendor, to rescind."
2 Sugd. Vend. P. 323, 324, is as follows:
"Where a vendor delivers possession of an estate to a purchaser, *Page 496 
without receiving the purchase-money, equity, whether the estate be or be not conveyed, and although there was not any special agreement for that purpose, and whether the estate be freehold or copyhold, gives the vendor a lien on the land for the money.
"So, on the other hand, if the vendor cannot make a title, and the purchaser has paid any part of the purchase-money, it seems that he has a lien for it on the estate."
3 Pom. Eq. Jur. § 1263, is as follows:
"The lien of the vendee under a contract for purchase of land for the purchase-money paid by him before a conveyance is the exact counter-part of the grantor's — or, as it is commonly called, the vendor's lien * * *. In the latter case, the legal title has been conveyed to the grantee, and yet the grantor retains an equitable lien upon the land as security for the purchase price agreed to be paid. In the former case, the legal title remains in the vendor, who has simply agreed to convey, while the vendee, although having as yet acquired no legal interest in the land by virtue of the contract, does obtain a lien upon it as security for the purchase-money he has paid, and for the performance of the vendor's obligation to convey. In England, therefore, and in the American states where the grantors' lien has been adopted, the vendee's lien upon the lands contracted to be sold as a security for so much of the purchase price as he has paid prior to a conveyance, and for the performance by the vendor of his obligation, exists to the same extent against the same classes of persons, and governed by the same rules, as the corresponding lien of the grantor. The lien only arises, of course, when the vendor is in some default for not completing the contract according to its terms, and the vendee is not in default so as to prevent him from recovering the purchase-money paid."
Mr. Justice Brown in Townsend v. Vanderwerker,160 U.S. 171, exhaustively examined the question and said at page 180:
"The earlier English cases held broadly that where a vendor of land has disabled himself from carrying out a contract to sell the land to the plaintiff, by a subsequent sale to another *Page 497 
party, a court of equity would entertain a bill as for a specific performance, and award damages to the plaintiff. This was the distinct ruling in Denton v. Stewart, 1 Cox Ch. Cas. 258, where the court directed an inquiry as to what damages the plaintiff had sustained, and decreed that such damages should be paid by the defendant. A similar ruling was made in Greenaway
v. Adams, 12 Ves. 395, although the master of rolls indicated a doubt with regard to the soundness of the principle announced inDenton v. Stewart. In Gwillim v. Stone, 14 Ves. 128, the bill asserted from the first that defendant could not make a good title, and asked for compensation by reason of the failure of the contract, and a decree was made for delivering up the contract, without prejudice to an action, instead of an inquiry before the master.
"In Todd v. Gee, 17 Ves. 273, 279, the case of Denton v.Stewart was practically overruled by Lord Chancellor Eldon, who held that the plaintiff in a bill for specific performance was not entitled generally to satisfaction by way of damages for the non-performance to be ascertained by an issue, or reference to a master, the court saying, `that, except in very special cases, it is not the course of proceeding in equity to file a bill for specific performance of an agreement; praying in the alternative, if it cannot be performed, an issue or an inquiry before the master with a view to damages. The plaintiff must take that remedy, if he chooses it, at law. Generally, I do not say universally, he cannot have it in equity, and this is not a case of exception.' This case was followed in Ferguson v. Wilson
(L.R.), 2 Ch. 77, where the plaintiff prayed the specific performance of a resolution, passed by the board of directors of a railway company, under which he alleged that he was entitled to have a certain number of shares allotted to him; and also prayed that if it should appear that all the shares had been allotted to other shareholders, the directors might indemnify him out of their own shares, or might be charged with damages. All the shares having been allotted before the filing of the bill, it was held that, as no remedy by way of specific performance was possible, plaintiff's claim for damages failed also. *Page 498 
"The principle of these cases was also adopted by Chancellor Kent in Kempshall v. Stone, 5 Johns. Ch. 193, which is strongly relied upon by the appellees in this connection. In that case, the defendant entered into an agreement with the plaintiff to sell and convey him a lot of land, and, after the time of performance had elapsed, sold the land to a third person for a valuable consideration without notice of the agreement. Plaintiff filed his bill for a specific performance, which it was held could not be decreed, the lands having passed into the hands of abona fide purchaser without notice, and the court further held that the plaintiff's remedy was at law for compensation in damages. In this case, as well as in the English cases above cited, there was no possible lien upon the lands and no trust in favor of the plaintiff which the court could execute, and it was very properly held that his only remedy was at law.
"But if the defendant has not wholly disabled himself from carrying out the contract, he may be decreed to perform specifically so much as he is still able to perform, and plaintiff may recover damages for the residue. Thus, in Burrow
v. Scammell, 19 Ch. Div. 175, when the defendant's title came to be investigated it was found that she was possessed of only a moiety of the premises she had agreed to lease to the plaintiff, the other moiety being vested in her son, a minor. She was decreed to specifically perform so much of the contract as she was able to perform, with an abatement of half the rent, and an inquiry as to damages was refused only upon the ground that there was no evidence that plaintiff had sustained any damages. The American cases are also to the effect that, where the defendant has only partially disabled himself from carrying out the contract, the plaintiff may be entitled to a specific performance so far as it can be enforced, and may receive compensation in damages for the deficiency. 3 Pom. Eq. Jur. §§ 1405, 1407;Bostwick v. Beach, 103 N.Y. 414.
"In the case under consideration, Mrs. Marvin had but partially disabled herself from carrying out her contract with the plaintiff according to its original terms, by encumbering *Page 499 
the property with the trust deed in favor of White. Under such circumstances, the plaintiff might have filed a bill for specific performance pro tanto, and obtained a decree for a conveyance of one-half of the property to himself subject to a moiety of the trust deed; but we think he also had the option of treating the whole property as subject to a lien in his favor, and praying that it be sold to satisfy his claim for half of its original value. He would doubtless have a remedy at law to recover the value of his services as well as the money disbursed by him. This, however, under the averments of his bill, would not be the amount to which he would be justly entitled. It is possible that, in an action at law, he might also recover a personal judgment against the estate for one-half the value of the property in question; but this is not the complete and adequate remedy which a bill to enforce a trust in his favor upon the property in dispute would afford to him, and we think it is not beyond the power of a court of equity to entertain a bill for this purpose.Sullivan v. O'Neal, 66 Tex. 433."
Judge Vann in Elterman v. Hyman, 192 N.Y. 113;84 N.E. Rep. 936, after exhaustively reviewing the authorities, concluded that the reason for the vendee's recovery in equity was the principle that he has a better right to something of which the vendor has the legal right. Stated in another way the reason of the rule is broadly because equity regards that as done which ought to be done. Those who have entered into a contract for the sale of land are, for most purposes, regarded in equity as having performed. Chancery has an ancient prerogative to compel performance of contracts for the conveyance of land; hence, where it would be inequitable to compel the buyer to perform he may still be afforded relief because he has the best right to be restored to his former position. There is generally in equity a mutuality of remedy.
Turning to decisions in our own state, we find that Vice-Chancellor Stevens, in Craft v. Latourette, 62 N.J. Eq. 206
(at p. 207), said: "The question argued in the briefs is whether the court will, under the circumstances detailed, give to the vendee a lien for the money paid by him upon so much *Page 500 
of the property agreed to be conveyed as the vendor or her devisees have title to. The precise question does not appear to have been decided in any reported decisions of this court, but I have no doubt that the lien exists." Citing in support of this proposition Rose v. Watson, supra, he further said: "The same view, annunciated as far back as 32 Geo. II (1758), by the master of the rolls in Burgess v. Wheate, 1 W. Bl. 123, 150, is adopted by the text writers. 2 Washb. Real Prop. 93, 94
(4th ed.); Pom. Eq. Jur. § 1263; 2 Jones Liens §§ 1105,1106. So far as the New Jersey cases go, they tend to support this view. In Copper v. Wells, Sax. 10, it was held that where a specific performance has become impossible, the party aggrieved has a lien for the value of beneficial or lasting improvements on the faith of an agreement which could not be executed because of a default in the opposite party. To the same effect is Berry v. Van Winkle, 1 Gr. Ch. 269."
Mr. Justice Depue said in Haughwout and Pomeroy v. Murphy,22 N.J. Eq. 531, 546: "In equity, upon an agreement for the sale of lands, the contract is regarded, for most purposes, as if specifically executed. The purchaser becomes the equitable owner of the lands, and the vendor of the purchase-money. After the contract, the vendor is the trustee of the legal estate for the vendee."
Mr. Justice Scudder in Graves v. Coutant, 31 N.J. Eq. 763,
recognized the seller's lien for the unpaid purchase-money. There certainly cannot be a partial conversion in equity. See, also,Morgan v. Dalrymple, 60 N.J. Eq. 466, an opinion by Mr. Justice Van Syckel; Knickerbocker Trust Co. v. Carteret SteelCo., 79 N.J. Eq. 501, an opinion by Vice-Chancellor Howell.
Chancellor Runyon in Pierson v. Lum, 25 N.J. Eq. 390, said that although equity would not decree the specific performance of a contract made by a married woman for the sale of her estate, the complainant should have a decree for the money paid by him on account of the house and grounds under such contract.
Vice-Chancellor Pitney in Cleveland v. Bergen Building *Page 501 and Improvement Co., 55 Atl. Rep. 117 (at p. 123), followed the English rule of Rose v. Watson, saying: "If, then, the land company could not in equity compel the complainant to complete the contract, does it not follow that the complainant may have relief for the money which she has already paid?"
The case of Kohoot v. Gurbisz, 101 N.J. Eq. 757, presented a complicated situation involving the statute of frauds and equities as between the parties, which was appropriately worked out in the court of chancery. Gurbisz owned two pieces of real estate in one of which Kohoot was his tenant, conducting a store business. Kohoot agreed to buy the other piece and transfer the store business to Gurbisz in lieu of $1,500 of the purchase price; and the agreement provided that if Gurbisz's title proved defective he should pay cash for the business, which he took over at once. The title was defective, the scheme fell through and Kohoot filed a bill praying (1) that a vendee's lien be imposed upon the lands agreed to be sold; (2) that a sale of the lands to satisfy the same be made; (3) that an injunction be granted to preserve the status quo, and (4) that a receiver of rents be appointed. The principal question considered in the court of chancery was whether the draft of an unsigned later agreement modifying the first should be considered as a contract, in the face of the statute of frauds, and the vice-chancellor held that it should not. The question of vendee's lien was apparently not argued before him, nor was it argued in this court, but it seems to have been taken for granted that in a proper case such lien would be impressed.
The recent decisions of this court, when carefully examined, will show the distinction between cases in which there is a prayer for specific performance, or for cancellation and surrender of a written instrument, in which a vendee's lien is proper as incidental to a case of purely equitable cognizance, and cases in which the vendee merely asks the return of money paid without more.
In Schweitzer v. National House and Farms Association,93 N.J. Eq. 644, this court held that the bill must be dismissed *Page 502 
because it was not clear what relief the complainant sought.
In Bailey v. B. Holding Co., 104 N.J. Eq. 241, and Grant
v. Olsan, Ibid. 242, the pleadings were so drawn that the suits amounted to no more than actions for the recovery of money had and received — obviously not the subject-matter of equitable jurisdiction.
In Clark v. Badgley, 105 N.J. Eq. 534, the plaintiff sought the recovery of $500, the down-money, paid under a real estate contract because of unmarketable title, and the impression of a lien upon the lands to secure the same. Neither cancellation or specific performance was sought.
Vice-Chancellor Backes, in the court below, 104 N.J. Eq. 260
(at p. 261), considered the prayer for a lien marked the distinction between Goldstein v. Ehrlick, 96 N.J. Eq. 52, and the cases of San Giacomo v. Oraton Inv. Co., 103 N.J. Eq. 273;Bailey v. B. Holding Co., supra, and Grant v. Olsan,supra, but this court pointed out that the mere prayer for an equitable lien in a case of that kind did not create equity jurisdiction.
In the case at bar, the learned Vice-Chancellor took Clark v.Badgley as a precedent for dismissing the present bill. Complainant here prayed for the recovery of the down-money, moneys expended for a survey and the examination of the title, and for the cancellation of the contract. And the answer and counter-claim filed seek performance of the agreement and the recovery of the balance of the purchase-money due. The replication joins issue on the answer and answers the counter-claim by alleging that by reason of the encroachments upon the land and extension of the building beyond the boundary lines the counter-claimant is not entitled to specific performance. Obviously, an issue over which the court of chancery has jurisdiction was tendered to that court, which consequently could apply its equitable remedies, and the dismissal of the bill without hearing the proofs in support of the pleadings was error.
The authorities controlling in this case have been reviewed at some length, for the reason that our decisions in San *Page 503 Giacomo v. Oraton, supra; Clark v. Badgley, supra, andBailey v. B. Holding Co., supra, appear not to have been clearly understood. Those cases go no further than to hold that where the purchaser does not seek specific performance or cancellation of a contract for the sale of land, a court of equity has no jurisdiction to compel the repayment of the down-money or to enforce a lien therefor. But where, as in Rose
v. Watson, supra, the purchaser properly invokes the jurisdiction of the court and it would be inequitable to compel specific performance, so far as the payments on the purchase price have been made, they may be recovered and there is in equity a lien on the estate to secure the same. The pleadings in the present case presented to the court of chancery the issue of whether or not the seller was entitled to specific performance, and if he was not whether this was due to any misconduct on the purchaser's part. The fact questions were for the court of chancery and upon a proper determination thereof the relief prayed depended. The court of chancery has most recently taken jurisdiction over such an action. See Security Bond, c., Co.
v. Weiss, 100 N.J. Eq. 156; Aron et al. v. Rialto Realty Co.,100 N.J. Eq. 513; Hartman v. Church Construction Co., 101 N.J. Eq. 512; Isserman v. Welt, 101 N.J. Eq. 634.
The decree below must be reversed.
For affirmance — None.
For reversal — TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 12. *Page 504