[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 539 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 540 
This is a suit seeking the rescission of an agreement to sell a certain parcel of real estate in the City of Atlantic City, New Jersey, and as well seeking a declaration of a vendee's lien on the premises agreed to be sold for the amount of the deposit paid on account of said agreement, and the expenses incurred by the vendee for search fees. The complaint also seeks to have the agreement of sale surrendered and cancelled. The plaintiffs' action for cancellation is grounded on equitable and legal fraud in the inducement of the contract and for such a defect in title, in violation of the terms of the agreement of sale, as would warrant refusal of specific performance.
It is to be noted that this action seeks as relief more than an attempted recovery of the money paid on account of the purchase price, and under the allegations in the complaint, the jurisdiction of the Chancery Division of the Superior Court is properly invoked. Richeimer v. Fischbein, 107 N.J. Eq. 493;153 Atl. Rep. 514; Reilly v. Griffith, 141 N.J. Eq. 154;56 A.2d 502. *Page 541 
The agreement provided for the sale of a parcel of real estate at the southeast corner of Connecticut and Oriental Avenues, Atlantic City, New Jersey. Paragraph 4 of said agreement reads as follows:
"4. The title to be delivered shall be a marketable title and shall be free and clear of all encumbrances including municipal liens and assessments and liability for assessments for improvements now constructed (except as herein stated), this clause to be operative as of the date of this agreement, and the title is to be subject to all existing restrictions of record, the seller, however, guarantees that there are no restrictions in any conveyance or plans of record affecting the said premises, which will prohibit the use and/or occupancy thereof as an apartment house and the premises shall be conveyed in the same condition as the same now are, reasonable wear and tear excepted."
At the time and place set for settlement the plaintiffs attended but refused to complete the purchase, for a number of reasons. One of these reasons, as set forth, was that the defendants could not deliver "a marketable title * * * free and clear of all encumbrances." The foundation of this contention lies in the following set of facts.
By deed dated December 5, 1854, Camden and Atlantic Land Company conveyed a tract of land situate in the City of Atlantic City, New Jersey to the United States of America. Said tract, as described, contained 2.31 acres.
By deed dated August 16, 1878 the City of Atlantic City and various other individuals executed a deed to the United States of America containing the following phraseology:
"Whereas the party of the first part are the owners of lands situate in Atlantic City in the County of Atlantic and State of New Jersey fronting on the sea in the vicinity of the Light House belonging to the United States which lands comprise portions of lots or blocks numbers 7, 8, 10, 14, 15, 17, 18, 116, 117 and 118, as known and designated on a Map entitled `Plan of Atlantic City' and also the ends of the Streets of Atlantic City terminating at the Ocean, And Whereas it is the purpose of the United States of America under the supervision of the Light House Board a bureau of the Treasury Department to adopt and put in force and effect precautionary measures to preserve the Light House and other property of The United States at Atlantic City and prevent the encroachments of the Sea thereon."
"And Whereas in carrying out such purposes it will become necessary for the United States to enter upon occupy and exercise control over the said property of the party of the first part and the shores in front of the same And Whereas in order to promote the purposes *Page 542 
aforesaid and to prevent delay in carrying out the same and to avoid all controversies as to the right of the United States to enter upon said lands and the lands under water lying in front of the same for the purpose of prosecuting said work the party of the first part have applied to the Riparian Commissioners for a grant of said lands under water to be made to them as riparian owners in such form as to secure to the United States the full and exclusive right to use the same for the purpose aforesaid."
"Now Therefore this indenture witnesseth that the said party of the first part * * * have granted bargained sold and conveyed and by these presents do grant, bargain sell and convey unto the said party of the second part and to their assigns the full and exclusive right to erect maintain and keep upon the said lands and upon and along the shore in front of the same and upon the lands under water between said lands and the exterior line established by the Riparian Commissioners all such erection barriers breakwaters or other works as in the judgment of the Light House Board are or shall become necessary to protect the property and buildings of the United States now erected or hereafter to be erected at Atlantic City and prevent the further encroachment of the Sea in and upon the shore and the abrasion thereof and in the erection and maintaining of said works to pass freely and without obstruction at all times upon and over the said lands and to grade the same in such manner as the character of the works and structures to be made by the United States may require. And the said party of the first part do severally and respectively for themselves covenant and agree to and with the said party of the second part and their assigns that they the party of the first part their heirs, successors and assigns will not do or suffer to be done any act or thing whereby the United States of America their agents servants and workmen shall be in any manner hindred or obstructed in the erection and maintaining of such intended works and that they will not claim any damage or compensation for the lands necessarily taken or occupied for the same."
The "property and buildings" referred to in this conveyance as being owned by the United States of America was the tract described in the deed of December 5, 1854.
It is admitted that the locus in quo was encompassed within the description contained in the deed of August 16, 1878 and that title to said parcel was obtained by the defendants through mesne intervening deeds from one of the grantors in said conveyance of 1878.
Plaintiffs contend that as a result of this conveyance the title held by the defendants was neither marketable nor free and clear of all encumbrances and, as a matter of fact, that said conveyance created an easement in the lands here involved. *Page 543 
The historical background which necessitated the obtainance of this alleged easement is amply and aptly set forth in Levy v.C.J. Adams Co., 103 N.J. Eq. 470; 143 Atl. Rep. 621. In that case the court held that the conveyance of 1878 created an easement over lands similarly situated to that in question, and that such an easement was a violation of the agreement to convey free and clear of encumbrances.
It must be generally recognized that an existing easement in the lands to be conveyed is a violation of the terms of an agreement to convey real estate free and clear of all encumbrances. Garber v. Stern, 100 N.J. Eq. 470;135 Atl. Rep. 550; Bier v. Walbaum, 102 N.J. Law 368;131 Atl. Rep. 888.
There is no dispute between the parties as to the original effect of the conveyance of 1878. The defendants do, however, set up as a defense that the United States of America has abandoned the easement therein granted. In substantiation of such a contention they urge that since the date of the 1878 conveyance there has been an accretion to the high land, causing the high water mark of the ocean to move some hundreds of feet oceanward from the property described in the deed of 1854, and that since there is no danger of further encroachment by the ocean, that the easement is of no effect. They also urge that since the United States of America permitted an apartment house to be erected on the premises in question subsequent to the 1878 conveyance that this in itself amounted to an abandonment of the easement. As a further ground, the defendants allege that there was an actual abandonment, as evidenced by a deed from the United States of America to the City of Atlantic City, dated October 1, 1946.
In Dill v. Board of Education of Camden, 47 N.J. Eq. 421;20 Atl. Rep. 739, the court said:
"It is well settled that mere non-user for any length of time, no matter how long, will not destroy or extinguish an easement arising, as here, out of express grant, as distinguished from one arising out of long adverse user. In order to destroy the easement by non-user, there must, in addition, be some conduct on the part of the owner of the servient tenement adverse to, and defiant of, the easement, and the non-user must be the result of it. In short, it must amount to an acquiescence of twenty years in act of the owner of the servient tenement, hostile to and intended to prevent it. This was held in *Page 544 
substance in Horner v. Stillwell, 6 Vr. 307 (at pp. 313, 314); Johnston v. Hyde, 6 Stew. Eq. 632 (at p. 642); andin Riehle v. Heulings, 11 Stew. Eq. 20, by Chancellor Runyon, whose decree was affirmed by the court of errors and appeals for the reasons given by him. He says (at p. 23): `A right of way cannot be released, abandoned or surrendered by a mere parol agreement. The right in this case is the privilege of the use of a lane or passage-way of twelve feet wide. It was granted in connection with the conveyance of the lot — by the same deed — for use in connection with the lot, and for the convenience of the owners thereof; and the grant was to them, their heirs and assigns, forever. If the fact were that the land or passage-way has not been used for the last twenty-seven years, except by express permission from the defendant or his father, it would not bar the complainant from a right to relief. The right in question exists by grant, and non-user alone will not forfeit or extinguish it.'"
In order to succeed in the abandonment there must be two elements present, an act tantamount to an abandonment and an intention to abandon.
Where an easement is created by deed, no duty is cast upon the owner of the dominant estate to make use thereof. The mere non-user of such an easement will not extinguish it. In order to constitute an abandonment the facts must clearly undertake such an intention. Arlington Realty Co. v. Keller, 105 N.J. Eq. 196; 147 Atl. Rep. 437; Nuzzi v. Corcione, 139 N.J. Eq. 339; 51 A.2d 357; Gera v. Szenzenstein, 130 N.J. Eq. 164; 21 A.2d 679; Bergen Turnpike Co. v. North Bergen,95 N.J. Law 369; 111 Atl. Rep. 686; Joachim v. Belfus,107 N.J. Eq. 240; 152 Atl. Rep. 161.
As so aptly stated in Levy v. C.J. Adams Co., supra, the study of erosion and accretion of the shore has not yet reached the point of being a positive science. There is no certainty that there may not, at some future time, occur an erosion at or about this locality which would require the construction of jetties or groins. The hundreds of thousands of dollars which the City of Atlantic City and other resorts on the New Jersey coast have expended in an attempt to check erosion is indicative of the uncertainty of the result.
Hydrography has been unable to establish a formula which will guarantee either to prevent erosion or to cause accretion on the ocean front. Various types of jetties and groins have been used without any uniformity of success. The *Page 545 
testimony of Mr. Somers, an expert in this case, demonstrates the vicissitudes of the actions of the ocean. The remoteness of the possibility or probability of the use of an easement does not, in itself, serve to extinguish it. Such remoteness may, however, be considered as an element in determining an intention to abandon. The mere fact that to date no protection has been required in recent years does not signify that it will never be required. Therefore, it is held that the argument concerning the remote possibility of the necessity of using the land in question acting in itself as an abandonment is without merit.
The second argument of defendants, that because they or their predecessors in title were permitted to construct an apartment house on the locus in quo without objection by the United States of America resulted in an abandonment is without merit.
The conveyance of 1878 granted to the United States of America an easement to enter upon the lands so conveyed for the purpose of constructing such "erections, breakwaters or other barriers" as might be required to prevent erosion. Only when and in the event such construction was required for the protection of the premises obtained by the 1854 deed did the United States of America have such a right. The United States of America was not required to prevent the grantors in the 1878 deed, nor their successors, from making any use of the demised premises which they saw fit to make. The premises were always subject to the easement granted. As a matter of fact, it is hardly conceivable that the granting of this easement for this purpose would have entitled the United States of America to prevent the use of those premises by the owners in such manner as they saw fit, pending the necessity of the exercise of the rights accorded the United States of America under the circumstances specifically stipulated in the grant. Such fact might as well be considered evidential of an intention to abandon. Under the facts here present, however, this course of conduct cannot be considered demonstrative of such an intent. *Page 546 
The final theory advanced by defendants is that the deed from the United States of America to the City of Atlantic City served as an abandonment of the easement. It is to be noted that of the 2.31 acres owned by the United States of America under the deed of 1854, there was conveyed to the City of Atlantic City by the 1946 deed 2.038 acres, leaving title to the remaining portion in the United States of America. The title to a portion of the land for the benefit of which the easement was created on the defendants (servient estate) remained in the United States of America (dominant estate). Even though it were conceded for the sake of argument that the grantee of the easement had relinquished or abandoned its easement, insofar as that portion of the land is concerned which was conveyed to the City of Atlantic City, it continues unabated for the benefit of the land to which the United States of America retained title.
Non-user of an easement for any length of time, no matter how long, will not serve, of itself, to destroy or extinguish an easement arising out of an express grant.
The proofs adduced before me do not sustain the defendants' contention that there was neither an intention to abandon nor any affirmed act of abandonment by the United States of America. The acts of defendants or their predecessors in title were not defiant of the easement, and the non-user by the United States of America did not result from any such defiance.
The title of defendants was not "free and clear of all encumbrances" as required by their contract.
It follows from the above that the title of defendants is not such as to make it reasonably certain that it will not be called into question in the future so as to subject the purchaser to the hazard of litigation with reference thereto. This is the test of a "marketable" title. Simpson v. Klipstein, 89 N.J. Eq. 543;105 Atl. Rep. 218; Bier v. Walbaum, supra.
Defendants comprehend that the portion of the agreement of sale reading "title is to be subject to all existing restrictions of record" includes the easement discussed above. The word "restriction" here connotes restrictive covenant. The distinction between an equitable restriction and an easement is *Page 547 
expressed in Welitoff v. Kohl, 105 N.J. Eq. 181, at p. 185;147 Atl. Rep. 390, as follows:
"We think that in adding this condition to the decree the learned vice-chancellor lost sight of the essential nature of the equitable restriction resulting from a restrictive covenant, and confused it with the estate or interest in land which exists in the case of a legal easement. The latter, generally defined as `a liberty, privilege, or advantage without profit, which the owner, as such, of one parcel of land, may have in the lands of another,' is said to lie `in grant' and is in fact a legal estate arising from a grant (actual or implied) of an interest in the survient property. The restriction resulting from a restrictive covenant, on the other hand, is not an estate in land at all, but is a pure creature of equity arising out of contract and (as applied against a subsequent grantee with notice) resting upon the equitable principle, as I understand it, that where an owner of land has purchased it with notice that a predecessor in title, as a part of the consideration which the latter paid for it, covenanted that it should or should not be used in a designated way in order that the use and enjoyment of other land of the party from whom he bought should be thereby benefitted, it would be inequitable to permit such owner, while enjoying the fruits of and claiming under the former grant, part of the consideration for which was the benefit promised by the covenant, to destroy such benefit by violating the covenant. The sole purpose of the restriction is to protect the benefit contracted for by the covenant, and it will not be enforced for any other purpose. The owner of a legal easement has something to sell if he so chooses, and, as in the case of the sale of any other property, the price he can get for it depends upon its value to the purchaser, and not upon the amount of its previous benefit to the seller; nor is such price affected (except through an influence on the seller's mind) by a change of conditions which has materially reduced such previous benefit to the seller."
In some instances an easement may be regarded as coming within the phrase "subject to restrictions of record." Kutschinski v.Thompson, 101 N.J. Eq. 649; 138 Atl. Rep. 569. The proofs in the matter sub judice fail to establish the necessary and vital elements required to attain such an interpretation.
The plaintiffs are granted a judgment for rescission of the contract as demanded, and for damages to the extent of the deposit paid on account of the purchase price, and search fees. To that extent, the plaintiffs are entitled to a vendee's lien.
In view of the foregoing, it is unnecessary to pass upon plaintiff's other allegations concerning the contract. *Page 548