58 N.J. Super. 273 (1959)
156 A.2d 161
RUSSELL S. BERTRAND, ET AL., PLAINTIFFS-RESPONDENTS,
v.
DONALD T. JONES, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 2, 1959.
Decided December 4, 1959.
*276 Before Judges CONFORD, FREUND and HANEMAN.
Mr. David Weinick argued the cause for appellants.
Mr. Irwin J. Silverlight argued the cause for respondents (Mr. George A. Wood, attorney).
The opinion of the court was delivered by HANEMAN, J.A.D.
Plaintiffs brought suit on December 19, 1957 to recover $2,900, the amount of a deposit paid to defendants under an agreement to purchase realty, and attendant legal expenses, upon the allegation that defendants failed to make final settlement as required by said agreement. Defendants alleged a breach by plaintiffs and counterclaimed for damage for their loss of bargain as established by a later sale of the premises. After a trial without a jury, judgment was entered for plaintiffs and defendants' counterclaim was dismissed.
On September 16, 1957 defendants entered into a written contract for the sale to plaintiffs of a dwelling situate in *277 the Township of Springfield. The agreement of sale required, inter alia, the payment of a deposit of $2,900. There was no provision for the forfeiture of said deposit upon the failure of plaintiffs to comply with the terms of the agreement as liquidated damages. Final closing was set for December 2, 1957. Time was not made of the essence.
The contract provided, inter alia:
"* * * [T]he said seller, will well and sufficiently convey to the said Purchaser, his heirs, successors and assigns, by warranty deed free from all encumbrance except as hereinafter specified, on or before the Second day of December next ensuing date hereof, * * *. (Emphasis supplied.)
In the event the party of the first part shall be unable to make conveyance to the party of the second part in accordance with this contract because of any objection to or defect in the title to the premises herewith described, which they are unable or unwilling to remove they shall be required to repay to the purchaser the deposit paid herewith, and thereupon the rights and liabilities of the parties hereto pursuant to this agreement shall terminate.

* * * * * * * *
Conveyance is to be made subject to existing restrictions of record, if any, which have been complied with; subject to the effect, if any, of municipal zoning laws. (Emphasis supplied.)

* * * * * * * *
9. National Newark & Essex Banking Company, Newark, N.J., hereinafter referred to as the `Bank,' is the owner and holder of a bond of Donald T. Jones and Frances C. Jones, h/w, for a loan in the original principal amount of $18,000.00 at 5% for 20 years dated July 31, 1956 secured by a first mortgage of said Donald T. Jones and Frances C. Jones, h/w, of even date therewith covering the above premises, recorded in the office of the Register of Deeds for Union County, New Jersey, in Book 2144, page 450.
The mortgage provides that the indebtedness secured thereby shall become due and payable forthwith at the option of the Bank in case of the conveyance of the mortgage premises.
The mortgage premises shall be conveyed to Russell S. Bertrand and Esther S. Bertrand, h/w, of South Orange, N.J., hereinafter referred to as the purchasers pursuant to the within agreement of sale.
The purchasers hereby agree: 1. To make application forthwith to the Bank to waive its aforementioned right under the terms of said mortgage by reason of such conveyance. 2. To permit the purchasers to pay the balance of the principal of said bond in the amount of $17,276.87 with interest thereon at the rate of 5% *278 per annum from and after payment due December 1, 1957, by continuing the payment of the regular monthly installments of principal and interest on said loan on the first day of each successive month beginning as of January 1, 1958 in the amount of $118.80 for the remainder of the loan term in accordance with the provisions of said bond and mortgage. 3. To release Donald T. Jones and Frances C. Jones, h/w, from any and all liability on the bond simultaneous with the conveyance of said premises and the assumption of the bonded indebtedness by the purchasers, effective December 1, 1957.
Consent by the Bank to modify the terms of the bond and mortgage as above set forth shall be evidenced by notification in writing to be received by the parties hereto not later than October 1, 1957, addressed c/o Harry J. Stevens, Inc., 242 Millburn Avenue, Millburn, N.J.
Upon notification, purchasers shall execute assumption agreement when, as and if requested by the Bank."
On November 26, 1957 counsel for plaintiffs advised counsel for defendants that they would "not be in a position" to make final settlement on December 2, 1957. The stated reason for the inability to so settle was plaintiffs' lack of sufficient funds to make the final payment. Defendants' counsel, by letter, thereupon set December 16, 1957 as the date for final settlement and stated that "time was of the essence." Plaintiffs, their counsel, the defendant Donald T. Jones, and defendants' counsel were present at the time and place appointed for final closing. Frances C. Jones, wife of Donald, was not present because of her pregnant condition. Plaintiffs had in their possession a cashier's check in sufficient amount to pay the balance of the purchase price. During the closing proceedings, plaintiffs' attorney produced for the first time a form of bond from plaintiffs to the bank, conditioned upon an assumption and payment of the mortgage by plaintiffs, and a "Three Party Agreement" between the bank, plaintiffs and defendants, relieving defendants of any liability on the bond and mortgage. This latter agreement had been received by plaintiffs' attorney from the mortgagees' counsel some weeks prior to the final closing date. No previous notice thereof had been given to defendants or their counsel. Defendant Donald T. Jones *279 declared that both he and his wife were more than willing to sign the agreement, and offered to send a friend to pick up his wife, who was at home, about 40 minutes away. Defendants had executed the deed and affidavit of title prior to the closing date and these were proffered by defendant Donald T. Jones at the meeting for the closing, but defendants had not been informed either by plaintiffs or by the bank that they would be requested to sign any further papers.
Plaintiffs stated that they would not wait, and refused to close title because of the unavailability of both defendants to sign the agreement forthwith. Defendant thereupon called the bank and, while defendants' attorney listened on an extension wire, spoke to John M. Schlegel, vice president of the bank, who stated that it was not necessary for all parties to sign the three party agreement but that if defendants did not sign, the Jones' liability on the bond would continue. The bank previously had found plaintiffs acceptable as obligors and had agreed to modify the mortgage by waiving the acceleration clause provided that plaintiffs signed the above mentioned bond. Mr. Schlegel testified that if plaintiffs had closed title, the mortgage still would have continued so long as payments were forthcoming in accordance with its terms. Defendants went so far as to offer to waive their right to be released on the bond. Nevertheless, plaintiffs refused to execute the above bond and close title solely because defendant Frances C. Jones was not present to sign the "Three Party Agreement."
Under date of October 4, 1957 plaintiffs' attorney, Wood, obtained a preliminary report of title, commonly known in certain parts of this State as a "starter certificate," from the Lawyers-Clinton Title Insurance Company of New Jersey. This report certified that defendants had title to the premises involved, subject to specifically listed exceptions. Following the legend "Easements," there appeared the notation "none." However, the certificate contained the following, under a separate heading: "Subject to facts shown on surveys made by Walter L. Aurnhammer & Son, C.E. & Surveyors, dated *280 July 7, 1956." Wood thereupon caused a continuation search of the record to be made from the date of the conveyance to the defendants. He did not see a copy of the continuation search prior to December 16, 1957.
Upon examining the survey some time after the middle of January 1958, Wood discovered a sewer right of way about five feet from the apex of the southwest corner of the premises and subtending the angle of said corner for a distance of about five feet. A search of the record by Wood then disclosed that in 1939 defendants' predecessor in title had granted an easement as located on said survey to the Township of Springfield to "build, construct, reconstruct, repair and maintain a sanitary sewer * * *."
Plaintiffs filed an amended complaint on February 6, 1958, in which they alleged for the first time that an easement for sewerage over the premises constituted a defect, i.e., an encumbrance, and that by reason thereof defendants had breached the contract. Defendants filed an amended answer alleging that plaintiffs had waived their right to assert the sewer easement as a breach of contract, and were estopped from alleging the easement as a breach. After judgment was rendered for plaintiffs and defendants' counterclaim was dismissed, defendants appealed to this court.

I.
Although both defendants would have had to sign the "Three Party Agreement" before being released by the bank from their liability under the bond and mortgage, they were not required to do so in order for said bond and mortgage to continue after transfer of title to plaintiffs as before, so long as payments were forthcoming in accordance with the original contract. The release under the said agreement was for the sole benefit of the defendants, and they offered to waive that right if necessary for the closing to go through. Defendants have demonstrated that they were anxious to perform, and had they known of the assumption agreement before the closing, it unquestionably would have been signed *281 by both of them. To hold that plaintiffs can now escape from their contractual obligations simply because defendants failed to sign a document about which they had no notice and from which they stood to reap nothing but benefit would be inequitable and illogical. Plaintiffs had at least several weeks prior to the date set for final closing in which to give notice to defendants of the necessity for them to sign the assumption agreement. Furthermore, the contract of sale provides that, "Upon notification, Purchasers [plaintiffs] shall execute assumption agreement * * *." (Emphasis supplied.) Even if it be conceded that defendants impliedly agreed to sign any documents that the bank might require to complete their release, surely it was not foreseeable to defendants that they would be required to sign a release of right inuring to their own benefit. Mrs. Jones had a perfectly valid reason for not attending the closing. Under the circumstances, she should have been given a reasonable time in which to sign the assumption agreement. The facts here are distinguishable from those in Doctorman v. Schroeder, 92 N.J. Eq. 676 (E. & A. 1921), cited by plaintiffs. The present defendants have been guilty of no deliberate or flagrant conduct; to the contrary, they have been eager to complete their bargain. As the court said in Labash v. Mancini, 14 N.J. Super. 116, 120-121 (Ch. 1951):
"[I]t is the aim of a court of equity, wherever possible, to relieve a purchaser from the forfeiture of his right to purchase property as a result of his failure to comply strictly with the terms of the contract. If the failure to comply is not deliberate or flagrant and there are no overriding equities, a court of equity will grant relief."
In the Labash case, Judge Grimshaw held that plaintiffs were entitled to specific performance even though they appeared at the designated place for closing thirty minutes late. We therefore conclude that plaintiffs refused to go through with the closing on December 16, 1957 for an inadequate reason.

*282 II.
However, it is undisputed that there is an easement for a sanitary sewer right of way under a portion of the premises of defendants. Minor though it may be in respect to the usability of the property for its intended purposes, and although the contract of sale expressly made the conveyance "subject to existing restrictions of record, if any, which have been complied with * * *," we conclude that the sewer easement cannot be construed as a "restriction" within the purview of the contract. In Kutschinski v. Thompson, 101 N.J. Eq. 649, 656 (Ch. 1927), the court, in distinguishing the words "easement" and "restriction," said:
"An easement is a right, distinct from ownership, to use in some way the land of another, without compensation. A restriction is a limitation of the manner in which one may use his own lands, and may or may not involve a grant."
An existing easement in lands to be conveyed violates the terms of an agreement to convey real estate free and clear of all encumbrances. Freedman v. Lieberman, 2 N.J. Super. 537, 543 (Ch. 1949). Although there have been cases in which the phrase "subject to restrictions of record" has been held to encompass easements, see Nass v. Munzing, 100 N.J. Eq. 421 (Ch. 1927); Kutschinski v. Thompson, supra; Kaufhold v. Cador Construction Co., 109 N.J. Eq. 1 (Ch. 1931), the facts of the case sub judice do not warrant such an interpretation. In the above cited cases the court found either that the complainants knew of the easement at the time of contracting or that the easement was observable by a mere casual inspection of the property and that the complainants had inspected the property several times with a view of purchase prior to the making of the contract. In the instant case, both plaintiffs and their counsel denied any actual knowledge of the existence of the easement on September 16, 1957, and there was no proof adduced which *283 would support a conclusion to the contrary. Furthermore, the sewer easement was not visible upon an examination of the premises. In the Freedman case, supra, the United States had an unabandoned easement to enter upon the premises in order to construct breakwaters or other barriers whenever necessary to prevent erosion on the ocean front, and the court declared that that portion of the agreement of sale reading "title to be subject to all existing restrictions of record" did not include said easement. "The word `restriction' here connotes restrictive covenant." Freedman v. Lieberman, supra, 2 N.J. Super. at page 546. Interestingly, the starter certificate listed "Restrictions" and "Easements" as separate categories, and referred to several restrictions, but reported that there were no easements. As here used, the word "restrictions" connotes restrictive covenants and not easements.
In ascertaining the meaning of the word "restrictions" as here employed, it must be considered in context with the entire clause in which it appears. It is to be noted that the exception concerns restrictions "which have been complied with." Plainly, this connotes a representation of compliance by the vendor with any restrictions upon the permitted uses of the subject property. The conclusion that "restrictions" refer solely to a limitation of the manner in which the vendor may use his own lands is strengthened by the further provision found in said clause that the conveyance is "subject to the effect, if any, of municipal zoning laws." Municipal zoning laws affect the use of property.
A familiar maxim to aid in the construction of contracts is noscitur a sociis. Simply stated, this means that a word is known from its associates. Words of general and specific import take color from each other when associated together, and thus the word of general significance is modified by its associates of restricted sense. 3 Corbin on Contracts, § 552, p. 110; cf. Ford Motor Co. v. New Jersey Department of Labor and Industry, 5 N.J. 494 (1950). The *284 word "restrictions," therefore, should be construed as being used in the same limited fashion as "zoning."
We therefore conclude that the title of defendants was not free and clear of all encumbrances as required by their contract.

III.
Where an agreement to purchase realty contains an express provision against encumbrances, a breach of that condition entitles the vendees to the equitable relief of rescission and serves to deny the vendors the relief of specific performance. Garber v. Stern, 100 N.J. Eq. 470 (Ch. 1927), affirmed 101 N.J. Eq. 742 (E. & A. 1927). Under ordinary circumstances, had plaintiffs relied upon this defect in the title, they would have been within their rights in rescinding the contract and in demanding a return of their deposit money. Freedman v. Lieberman, supra.
"Under a contract to convey real estate `by a good and marketable title free and clear of all encumbrances,' the vendor is bound to have and tender a title free from encumbrances."
Garber v. Stern, supra, 100 N.J. Eq. at page 472. Furthermore, where the contract of sale contains a covenant against encumbrances, the existence of an encumbrance constitutes a breach of the covenant, even though the encumbrance be so slight that in the absence of the covenant equity would compel specific performance. Vogel v. Rogers, 32 N.J. Super. 486 (App. Div. 1954).
Nevertheless, defendants maintain that since plaintiffs did not base their refusal to settle on this ground on December 16, 1957, they either waived their right to subsequently raise it or they are estopped from so doing. A waiver is a conscious, deliberate, intentional relinquishment of known right. Orlando v. Camden County, 132 N.J.L. 173, 176 (Sup. Ct. 1944). Plaintiffs could not have waived the right to raise a defense about which they knew nothing. *285 As noted above, the starter certificate reported, "Easements: none." Furthermore,
"It is sometimes said that a promisor who states an insufficient reason for refusing to perform his promise cannot afterwards defend by showing that another and justifying reason existed. This is not correct. If a condition of his duty to perform did not in fact exist or occur, he was privileged not to perform. That he did not refer to this condition and that he gave bad reasons is not material as long as there has been no change of position in reasonable reliance upon the promisor's disregard of the unperformed condition. An estoppel may arise, preventing the promisor from setting up his otherwise good defense; but his mere omission to mention that defense and his statement of bad reasons are not sufficient to raise an estoppel. * * *
A buyer of land who points out specific defects in title, as his only stated reason for rejecting it and refusing to pay cannot set up other defects as a defense, if those other defects could and would have been cured in time but for the buyer's misleading the seller into thinking that they were regarded as immaterial or were non-existent. The buyer's words and conduct may operate as an estoppel." (Emphasis supplied.)
3 Corbin on Contracts (1951), § 762, pp. 937-9, 941. See also Higgins v. Eagleton, 155 N.Y. 466, 50 N.E. 287 (N.Y. Ct. App. 1898); Schwartz v. Woodruff, 132 Mich. 513, 93 N.W. 1067 (Mich. Sup. Ct. 1903); Ready v. Sound Inv. Co., 64 Wash. 422, 116 P. 1093 (Wash. Sup. Ct. 1911); Garbarino v. Union Savings & Loan Ass'n, 107 Colo. 140, 109 P.2d 638, 132 A.L.R. 1480 (Col. Sup. Ct. 1941).
Prof. Corbin further states that:
"In an action for breach by an unconditional repudiation it is still a condition precedent to the plaintiff's right to a judgment for damages that he should have the ability to perform all such conditions. If he could not or would not have performed the substantial equivalent for which the defendant's performance was agreed to be exchanged, he is given no remedy in damages for the defendant's non-performance or repudiation. * * * The willingness and ability to perform need not continue after the repudiation; it is merely required that they should have existed before the repudiation and that the plaintiff would have rendered the agreed performance if the defendant had not repudiated.
Thus, if the buyer of land repudiates the contract and refuses to pay, it is unnecessary for the vendor to make a tender of a conveyance *286 before bringing suit; but he cannot win his suit if it appears that he himself could not or would not have substantially performed on his own part. * * *
The ability of the plaintiff to perform the agreed subject of exchange on his own part is a condition precedent that is not excused by a repudiation by the other party, even though that repudiation is based upon another and insufficient ground." (Emphasis supplied.)
4 Corbin (1951), § 978, pp. 924-926 op. cit., supra; cf. Earlin v. Mors, 1 N.J. 336, 341 (1949), a case in which the court clearly implied that the seller could have cleared up all of the objected to defects in title (so interpreted by Prof. Corbin in the same section of the work cited pp. 925-926, f.n. 10). See also Caporale v. Rubine, 92 N.J.L. 463 (E. & A. 1918), where it was held that the plaintiff was not relieved from establishing, in order to recover damages for a breach of contract, that he was able and ready to perform his part of the undertaking. The court, 92 N.J.L. at page 466, declared that:
"The measure of the plaintiff's legal obligation in the present case was to establish by competent proof that he was able and ready to convey a title such as would comply with the requirements of the agreement."
In the case sub judice the township engineer testified that the maintenance of the easement, buried some seven or eight feet underground, was essential to the sanitary sewer system of the township. Implicit in such a statement is the conclusion that defendants could not have obtained a release of the encumbrance even if the plaintiffs had called it to their attention on the day of settlement. Defendants never changed their position in reliance upon the inadequate ground for repudiation asserted by plaintiffs on December 16, 1957. As stated, they could not have cleared the title even if notified, and, furthermore, they did not sell the premises until July 1958, some six months after receiving plaintiffs' amended complaint wherein the sewer easement was alleged to be a defect in the title. For plaintiffs to be estopped the defendants must have relied to their detriment upon the repudiation.
*287 In the light of an application of the above authorities to the facts in the instant case, we conclude that defendants, who were unable at any time to perform their part of the bargain, are not entitled to receive damages from the plaintiffs, even though plaintiffs originally asserted an inadequate ground for rescission, and that plaintiffs are entitled to recover their deposit, both upon the rationale of the authorities we have cited and the express provision of the contract as quoted above, entitling the vendee to a return of deposit "in event the party of the first part shall be unable to make conveyance to the party of the second part in accordance with this contract because of any objection to or defect in the title * * * which they are unable or unwilling to remove."
However, as that same provision limits the liability of the defendants to the deposit, the judgment must be modified to delete the allowance therein of $250 "counsel fees." As so modified, the judgment is affirmed, but without costs either below or on appeal.